The PEOPLE of the State of
Colorado, Petitioner,

v.

Ronald GARNER, Respondent.

No. 89SC507.

Supreme Court of Colorado,
En Banc.

Feb. 4, 1991.

As Modified on Denial of Rehearing
Feb. 25, 1991.

As Modified March 5, 1991.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Everett Engstrom, Sp. Asst. Atty. Gen., Denver, for petitioner.

David F. Vela, Colo. State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for respondent.

Justice QUINN delivered the opinion of the court.

The question in this case is whether, in a murder prosecution, evidence that the defendant killed two other persons was properly admitted as other-crime evidence for the purpose of establishing the defendant's identity as the perpetrator of the murder charged against him. Resolution of that question requires a consideration of the appropriate standards for admitting other-crime evidence under the Colorado Rules of Evidence. The court of appeals held that a trial court, before admitting other-crime evidence, must consider the evidence of each crime independently of all other evidence in the case and then must determine whether the proponent of the other-crime evidence establishes by clear and convincing evidence the identity of the defendant as the perpetrator of the other crime. The court of appeals accordingly vacated the defendant's conviction for first degree murder and remanded the case to the trial court for further proceedings consistent with the standards for admissibility articulated in its opinion. We reverse the judgment of the court of appeals and reinstate the judgment of conviction entered by the trial court.

## I.

The defendant, Ronald Garner, was charged with first degree murder after deliberation and felony murder by causing the death of Tammera Sue Wilson during the commission or attempted commission of sexual assault on or before July 1, 1982.[1] The defendant entered a not guilty plea,

and the case was tried to a jury in January 1985.

The prosecution's case was built on circumstantial evidence. It was the prosecution's theory that the defendant had an intimate relationship with the victim, who was a trainee-employee at a Winchell's Donut shop managed by the defendant, and that when the victim tried to end the relationship the defendant sexually assaulted and strangled her to death in her apartment. Prior to trial, the trial court conducted a hearing on the prosecution's motion to offer other-crime evidence during the trial for the purpose of establishing the identity of the defendant as the perpetrator of the murder charged against him. The prosecution presented evidence at the hearing that the defendant had strangled two other women with whom he had an intimate relationship.

The evidence of one of the other crimes related to the strangulation death of the defendant's wife, Lyric Garner, on February 11, 1970. Shortly prior to her death, Mrs. Garner told her mother that she wanted to leave the defendant. On the day of her death the defendant flagged down a police officer and told the officer that he was not able to awaken his wife. The officer followed the defendant to his apartment and found Lyric Garner's nude body on the bedroom floor. The badly beaten body was covered up to the neck with a blanket. The defendant told the police that he had slapped his wife during an argument over their cat and then had left their apartment. An autopsy was performed, and it was determined that Mrs. Garner died from manual strangulation. The defendant was charged in 1970 with the first-degree murder of his wife and entered a guilty plea to voluntary manslaughter.

The evidence of the other crime related to the 1984 strangulation death of Jennifer Della Costa, who had been participating in a six-week training program at a Winchell's Donut shop managed by the defendant.

---

1. Although Wilson was murdered on July 1, 1982, the defendant was not charged in this case until approximately two years later, when the defendant became implicated in the strangulation death of Jennifer Della Costa, who, like

Wilson, was a Winchell's Donut shop trainee and was murdered under circumstances very similar to those involved in the instant prosecution.

During the training program she developed a personal relationship with the defendant. Della Costa concluded the program on June 10, 1984, and was scheduled to return to her husband in Texas the following day. On the evening of June 10 the defendant and Della Costa went to a bar and returned to the victim's motel room. The next day Della Costa's nude body, with bedding pulled up to the head, was found in her motel room. The body had abrasions and contusions on the left side of the jaw bone, and an autopsy determined that Della Costa had been strangled to death.

The trial court ruled that Colorado law did not require a separate consideration of the evidence relating to each crime, independently of any other evidence, in determining the admissibility of the other-crime evidence, but rather required the court to determine the admissibility of other-crime evidence by considering all the evidence in the case, including the other-crime evidence as well as the evidence relating to the crime in question. Under that standard, the trial court determined that the crime charged against the defendant and the two other homicides had sufficiently similar features as to establish by clear and convincing evidence the defendant's identity as the perpetrator of the two other crimes. The trial court accordingly ruled that the other-crime evidence would be admitted into evidence at trial.

At trial, the prosecution's evidence showed that the victim was an employee at a Winchell's Donut shop managed by the defendant and was involved in an intimate relationship with the defendant. During the evening of June 30, 1982, the victim met with Susan Bedard, one of her friends, and told her that she wanted to break off her relationship with the defendant and had spoken to the defendant that very day but had forgotten to retrieve the key to her apartment from him. Later that evening the defendant was socializing with friends at an apartment next to the victim's apartment and was seen entering the victim's apartment on two occasions.

The prosecution's evidence showed that the defendant was one of the last persons known to have been with the victim during the evening of June 30, 1982, and that on the following day the victim's mother went to the victim's apartment and found her dead daughter's body lying face down in bed, scantily clothed, and with blankets pulled up to her head. The body was badly bruised, and an autopsy examination indicated that the victim had been sexually assaulted and had been strangled to death. Semen stains were discovered on the victim's bedding, and serological testing established that some of the semen could have come from the defendant. In addition, several hairs were found on the victim's bed and on a blanket in the victim's apartment. Expert testimony established that some of these hairs matched the defendant's head and pubic hair.

The prosecution offered into evidence the other-crime evidence previously ruled admissible. The trial court instructed the jury that such evidence was admitted for the limited purpose of establishing the defendant's identity as the perpetrator of the crime charged against him. A similar limited-purpose instruction was included in the court's charge to the jury at the conclusion of the evidence.

The defendant did not testify in his defense. The defense evidence consisted of the testimony of an expert witness who stated that, in addition to hairs consistent with those of the defendant found in the victim's apartment, there were several other hairs recovered from various items in the apartment that originated from persons other than the defendant. The jury found the defendant guilty of first degree murder, and the court imposed a sentence of life imprisonment.[2]

On appeal, the court of appeals vacated the judgment of conviction and remanded the case to the trial court for additional findings. The court of appeals held that this court's decision in *People v. Botham*, 629 P.2d 589 (Colo.1981), although decided

---

**2.** The jury found the defendant guilty of both first degree murder after deliberation and felony murder. The trial court, pursuant to *People*

*v. Lowe*, 660 P.2d 1261 (Colo.1983), entered a judgment of conviction for the single crime of first degree murder.

under the law of evidence predating the Colorado Rules of Evidence, required the proponent of other-crime evidence to establish by clear and convincing evidence the identity of the defendant as the perpetrator of the other crime and also required the trial court, in determining the admissibility of other-crime evidence, to analyze the evidence as to a specific crime independently of any other evidence in the case in determining whether the defendant's identity as the perpetrator of that other crime was adequately established.[3] The court of appeals remanded the case to the trial court with directions to make additional findings under the aforementioned standard and to either grant a new trial or reinstate the judgment of conviction. We thereafter granted the People's petition for certiorari to consider whether the court of appeals employed the proper standards in resolving the admissibility of other-crime evidence.

## II.

Although the Colorado Rules of Evidence provide the controlling evidentiary norms for resolving this case, we believe it appropriate to briefly review preexisting Colorado case law on the admissibility of other-crime evidence, since it was that preexisting law upon which the court of appeals primarily relied in deciding this case. Prior to the adoption of the Colorado Rules of Evidence, which became effective on January 1, 1980, Colorado decisional law adhered to the exclusionary principle that, subject to narrow exceptions, evidence of other crimes was not admissible as proof of the accused's guilt with respect to the crime charged. *E.g., People v. Lucero*, 200

Colo. 335, 615 P.2d 660 (1980); *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979); *Huerta v. People*, 168 Colo. 276, 450 P.2d 648 (1969); *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959); *Dockerty v. People*, 74 Colo. 113, 219 P. 220 (1923). The rationale for this exclusionary principle was stated in *Stull* as follows:

[A] presumption of guilt should not be generated against an accused by showing that he committed a crime indicative that he is a depraved person who likely would commit the crime for which he is being tried. Basic to our criminal law concepts is the commandment that: "Thou shalt not convict a person of an offense by proof that he is guilty of another."

Bearing in mind that evidence of similar acts has inhering in it damning innuendo likely to beget prejudice in the minds of jurors, and that such evidence tends to inject collateral issues into a criminal case which are not unlikely to confuse and lead astray the jury, it becomes exigent that courts observe the fine balance in regard to such evidence that must exist between the necessity of proof on the part of the prosecutor and the danger of unfair prejudice to the defendant.

140 Colo. at 284, 344 P.2d at 458.

Because other-crime evidence exposes an accused to the risk of being found guilty on the crime charged due to bad character rather than on the basis of the evidence relating to the crime charged, *Lucero*, 200 Colo. at 343, 615 P.2d at 665; *see* IIIA J. Wigmore, Evidence § 921 at 724 (Chadbourn rev. ed. 1970), our case law autho-

---

**3.** The court of appeals in its opinion acknowledged that the United States Supreme Court in *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), interpreted the Federal Rules of Evidence to require that the admissibility of other-crime evidence be resolved as a question of conditional admissibility under Rule 104(b), pursuant to which the trial court is to examine all the evidence and decide whether the jury could reasonably find the conditional fact by a preponderance of the evidence. The court of appeals also acknowledged this court's adoption of the preponderance-of-evidence standard in *People v. Montoya*, 753 P.2d 729 (Colo.1988), as the appropriate standard for

resolving preliminary questions of admissibility under the Colorado Rules of Evidence. The court, however, believed that this court's adoption of the clear and convincing standard in *People v. Botham*, 629 P.2d 589 (Colo.1981), as well as this court's decisions in *People v. Honey*, 198 Colo. 64, 596 P.2d 751 (1979) and *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959), contained the controlling standards for ruling on the admissibility of other-crime evidence, notwithstanding the fact that these cases were not decided under the Colorado Rules of Evidence but rather were common law decisions predating the adoption of the Colorado Rules of Evidence.

rized the admission of other-crime evidence only if the trial court made the following three preliminary findings: first, that the evidence was being offered for a valid purpose—such as, for example, identity, motive, intent, a plan or scheme of which the crime charged was an integral part, or the absence of mistake or accident; second, that the evidence was relevant to the material issue for which it was offered; and third, that the probative value of the other-crime evidence outweighed the prejudice which might result from its admission. *Honey*, 198 Colo. at 67, 596 P.2d at 754. In keeping with this restrictive treatment of other-crime evidence, we held in *People v. Botham*, 629 P.2d at 602, that it was incumbent upon the prosecution, as the proponent of other-crime evidence, to establish to the satisfaction of the trial court by clear and convincing evidence that the other crime actually occurred and that the defendant was the person who committed that crime.

When other-crime evidence qualified for admission under one of the exceptions to the general rule of exclusion, our prior case law required trial courts, upon admitting the evidence, to instruct the jury at that time "as to the limited purpose for which the evidence is being received and for which the jury may consider it" and to repeat this limited-purpose instruction in the general instructions to the jury at the close of the evidence. *Stull*, 140 Colo. at 284, 344 P.2d at 458. In addition, as a further precaution calculated to eliminate the potential for jury misuse of the other-crime evidence, the court's instructions to the jury were to be carefully couched in terms of "other transactions," "other acts," or "other conduct," rather than "other crimes" or "other offenses." *Id.*

### III.

We have not previously considered either the quantum of proof or the procedural protocol for resolving the admissibility of other-crime evidence under the Colorado Rules of Evidence, but we have addressed other issues under the Rules that are somewhat related to these issues. Those deci-

sions, along with the structure and text of the Rules themselves, demonstrate that the Rules have significantly changed the preexisting law relating to the admissibility of other-crime evidence.

### A.

■ Although the Rules are silent on the quantum of proof applicable to questions of admissibility, we have adopted the preponderance-of-evidence standard as the controlling norm for determining preliminary questions relating to admissibility. For example, we held in *People v. Montoya*, 753 P.2d 729 (Colo.1988), that a trial court must apply the preponderance-of-evidence standard in determining whether the evidentiary antecedents for the admission of an out-of-court statement of an alleged co-conspirator under CRE 801(d)(2)(E) have been established. The preponderance standard, we stated in *Montoya*, is the "traditional standard applicable to the resolution of most preliminary questions of admissibility" and should accordingly apply in determining the admissibility of a co-conspirator's statement under the Colorado Rules of Evidence. *Id.* at 733; *see also People v. Romero*, 745 P.2d 1003, 1016 (Colo.1987).

A fact is established by a preponderance of the evidence when, upon consideration of all the evidence, the existence of that fact is more probable than its nonexistence. *See Page v. Clark*, 197 Colo. 306, 318, 592 P.2d 792, 800 (1979). The preponderance standard thus ensures that a trial court, before admitting evidence, will have found it more likely than not that the technical issues and policy concerns addressed by the Rules have been duly considered. *See Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987); *Montoya*, 753 P.2d at 733. Contrary to the decision of the court of appeals in this case, the clear and convincing standard adopted by this court in our *Botham* decision, 629 P.2d 589, was a common-law rule of evidence and is no longer the controlling standard for determining preliminary questions of admissibility under the Colorado Rules of Evidence. In utilizing the *Botham* standard, the court of appeals erred.

## B.

Under our case law predating the Colorado Rules of Evidence, the determination of preliminary questions concerning the admissibility of other-crime evidence was to be made by the trial court. *Honey,* 198 Colo. at 67, 596 P.2d at 753–54; *Stull,* 140 Colo. at 284–85, 344 P.2d at 458. These preliminary questions now must be resolved in accordance with subsections (a) and (b) of Rule 104.

CRE 104(a) provides that, subject to the provisions of subdivision (b) of Rule 104, preliminary questions concerning the admissibility of evidence shall be determined by the trial court and that the trial court shall not be bound by the Rules of Evidence, except with respect to privileges, in making that determination. CRE 104(b) states that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

■ Subdivision (a) of CRE 104 addresses situations in which preliminary questions concerning the admissibility of evidence depend upon the application of policy considerations, such as those relating to the competency of a witness to testify, the existence of a privilege, the applicability of hearsay exceptions, or other protective policies of exclusionary rules. *See Burlington Northern Railroad Co. v. Hood,* 802 P.2d 458, at 467–468 (Colo.1990); 1 J. Weinstein and M. Berger, Weinstein's Evidence ¶ 104[02] at 104–20 (1990); E. Morgan, Basic Problems of Evidence 44–45 (5th ed. 1976). In contrast, preliminary questions of conditional relevancy under CRE 104(b) are "questions of probative force rather than evidentiary policy." *Hood,* at 468 (quoting *United States v. James,* 590 F.2d 575, 579 (5th Cir.) *cert. denied* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), and in resolving such questions the judge merely determines as a preliminary matter whether the foundation evidence is sufficient to support a reasonable finding by a jury of the fulfillment of the condition. *Hood,* at 468. If such a *prima facie* show-

ing is made, the trial court admits the evidence for the jury's consideration. *Id.*; *see* Fed.R.Evid. 104(b) advisory committee's note, 56 F.R.D. at 198–99 (1972).

The Colorado Rules of Evidence do not answer whether preliminary questions concerning the admissibility of other-crime evidence should be resolved under CRE 104(a) or CRE 104(b). In *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the United States Supreme Court addressed this question under the Federal Rules of Evidence and held that a trial court should apply Rule 104(b) in resolving the admissibility of other-crime evidence. Huddleston was charged with the knowing possession and sale of stolen video cassette tapes in interstate commerce. At his trial, the court allowed the government to introduce before the jury other-crime evidence consisting of Huddleston's involvement in a series of sales of allegedly stolen televisions and appliances from the same suspicious source as the video cassette tapes on the basis that such evidence was relevant to Huddleston's knowledge that the video cassette tapes were stolen. In approving the admission of such evidence, the Supreme Court held that a trial court should determine preliminary questions concerning the admissibility of other-crime evidence by examining "all the evidence in the case" and deciding "whether the jury could reasonably find the conditional fact—here, that the televisions were stolen—by a preponderance of the evidence." 485 U.S. at 690, 108 S.Ct. at 1501.

■ We agree with that part of the *Huddleston* analysis which requires a trial court, in ruling on the admissibility of other-crime evidence, to consider all the evidence in the case. A trial court, in other words, should not restrict itself to a consideration of the evidence relating to a particular other crime, independently of all other evidence in the case. "The sum of an evidentiary proposition," as the Court noted in *Huddleston,* "may well be greater than its constituent parts," and "individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it." 485 U.S. at 691, 108 S.Ct. at

1502 (quoting *Bourjaily v. United States,* 483 U.S. at 179–80, 107 S.Ct. at 2780–81). We thus reject the court of appeals' holding in this case that evidence relating to another crime must be considered independently of all other evidence in the case in determining the admissibility of other-crime evidence.

The People urge us to adopt that part of the *Huddleston* decision which relegates the resolution of preliminary questions concerning the admissibility of other-crime evidence to Rule 104(b). We acknowledge that CRE 104 is textually identical to Fed. R.Evid. 104 and that the Supreme Court's interpretation of the Federal Rules is certainly entitled to careful consideration. We are satisfied, however, that Colorado's longstanding restrictive policy concerning the admissibility of other-crime evidence militates against adoption of that part of the *Huddleston* analysis.[4]

As previously discussed in Part II of our opinion, Colorado decisional law over the years has adhered to the exclusionary principle that, subject to narrow exceptions, the inherent prejudice in other-crime evidence renders such evidence generally inadmissible in a criminal prosecution. The basic reasons for excluding other-crime evidence were set forth in *Stull,* 140 Colo. 278, 344 P.2d 455, and these reasons are no less applicable today than they were prior to the adoption of the Rules of Evidence. CRE 404(b) reflects this general rule of exclusion by providing that "[e]vidence of other crimes ... is not admissible to prove the character of a person in order to show that he acted in conformity therewith." To submit other-crime evidence to the jury merely because the jury could reasonably find the existence of the conditional fact by a preponderance of the evidence creates a substantial risk that, regardless of the jury's ultimate determination of the conditional fact, the jury might well convict the defendant not on the basis of the strength of the prosecution's case but because the defendant is a person of bad character. Utilization of CRE 104(a) to resolve questions concerning the admissibility of other-crime evidence avoids this risk by requiring the trial court to be satisfied by a preponderance of the evidence of the conditions precedent to admissibility before the other-crime evidence is ever exposed to the jury. We hold, therefore, that the admissibility of other-crime evidence must be determined as a preliminary matter by the trial court under CRE 104(a) rather than CRE 104(b).

### C.

In ruling on the admissibility of other-crime evidence, the trial court must consider the totality of all the evidence in the case, except evidence relating to privileged information, and must apply the preponderance-of-evidence standard in deciding whether it is more likely than not that the factual conditions precedent to admitting

---

**4.** In *Huddleston,* the Supreme Court recognized the danger of unfair prejudice presented by the admission of other-crime evidence, but went on to conclude that the source of protection against such prejudice did not emanate from the requirement of a preliminary finding of the conditional fact that rendered the proffered evidence relevant, but rather from the following provisions of the Rules of Evidence:

> first, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice ...; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts

> evidence is to be considered only for the proper purpose for which it was admitted.

485 U.S. at 691–92, 108 S.Ct. at 1502 (citations and footnote omitted). Given the clearly recognized potential for prejudice inherent in other-crime evidence, it seems more reasonable to us, and certainly more protective of the fairness of the trial, to require the trial court to be satisfied by a preponderance of the evidence of the conditionally relevant facts before permitting such evidence to come before the jury, and not merely to determine whether the jury "could reasonably find" the conditionally relevant facts by a preponderance of the evidence. As we discuss in the text, only if the trial court is convinced by a preponderance of the evidence of the existence of the conditionally relevant facts is there a need to further consider whether the proffered evidence is logically relevant and whether the probative value of the other-crime evidence is outweighed by the danger of unfair prejudice.

other-crime evidence have been satisfied and then must consider the technical and policy concerns inherent in the other-crime evidence. These technical and policy concerns are no better exemplified than in the interrelationship between the general rules of relevancy and the rule of limited admissibility for other-crime evidence. Relevant evidence is defined in CRE 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence, however, may be excluded under CRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." [5] The general principle enunciated in CRE 404(a) is that, subject to certain enumerated exceptions, evidence of a person's character or character trait is not admissible for the purpose of proving that he acted in conformity with his character or character trait on a particular occasion. Thus, pursuant to CRE 404(b), evidence that the accused committed some other crime is not admissible simply to prove that he acted in conformity with that character or character trait in committing the crime charged, but may be admitted, if otherwise relevant, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." We analyzed the interrelationship between the general standards of relevancy and the rules of limited admissibility for other-crime evidence in *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990), where we stated:

Read together, these rules require a four-part analysis to determine whether evidence of prior acts is admissible. First, we must ask whether the proffered evidence relates to a material fact, *i.e.*, a fact "that is of consequence to the determination of the action." CRE 401; [*People v. Carlson*, 712 P.2d 1018, 1021 (Colo. 1986)]. If it does, we proceed to the second question: is the evidence logically relevant, *i.e.*, does it have "any tendency to make the existence of [the material fact] more probable or less probable than it would be without the evidence?" CRE 401; *Carlson*, 712 P.2d at 1021. If the evidence is logically relevant, we then must determine whether the logical relevance is independent of the intermediate inference, prohibited by CRE 404(b), that the defendant has a bad character, which would then be employed to suggest the probability that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character. *See* CRE 404(b); Imwinkelreid[, Uncharged Misconduct Evidence,] § 218 [ (1984) ]. Finally, if the proffered evidence survives the first three parts of the analysis, we must assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. CRE 403; *Carlson*, 712 P.2d at 1022.

■ By way of summary, therefore, we hold that CRE 104(a) is applicable to the resolution of preliminary questions concerning the admissibility of other-crime evidence. Before admitting such evidence, the trial court, on the basis of all the evidence before it, must be satisfied by a preponderance of the evidence that the other crime occurred and that the defendant committed the crime. The Court then must consider whether the other-crime evidence is being offered for a proper purpose and is logically relevant to a material issue in the case, whether the logical relevancy of the evidence is independent of the intermediate inference of the defendant's bad character, and whether the probative value of the

---

**5.** Prior to the adoption of the Colorado Rules of Evidence, our case law employed a balancing test which required the trial court to determine whether the probative value of the other-crime evidence outweighed the prejudice to the defendant from admitting such evidence. *People v. Honey,* 198 Colo. 64, 67, 596 P.2d 751, 754 (1979). The balancing test under CRE 403, in contrast to the *Honey* test, is formulated in terms of the danger of unfair prejudice substantially outweighing the probative value of the other-crime evidence. Thus, *Honey's* formulation of the balancing test is no longer applicable under the Colorado Rules of Evidence.

other-crime evidence is substantially outweighed by the danger of unfair prejudice to the defendant. If the court is satisfied that these relevancy concerns have been met and that the probative value of the evidence is not outweighed by the danger of unfair prejudice, it should admit the other-crime evidence. If the court is not so satisfied, then the other-crime evidence should be ruled inadmissible. If the other-crime evidence is admitted, the court should instruct the jury, pursuant to CRE 105, on the limited purpose for which such evidence is admitted at the time of admission. Although the Colorado Rules of Evidence do not address whether, as we previously held in *Stull,* 140 Colo. at 284, 344 P.2d at 458, the limited-purpose instruction should be repeated in the court's written instructions to the jury, we conclude that, in order to safeguard against the potential for the jury's misuse of the other-crime evidence, the trial court should repeat the limited-purpose instruction in its general charge to the jury at the conclusion of the evidence. For reasons stated in *Stull,* the court should refer to the other-crime evidence as a "transaction," "act," or "conduct" and should avoid such terms as "offense" or "crime."

### IV.

It is obvious from our prior discussion that the judgment of the court of appeals must be reversed. The court of appeals erred in ruling that the prosecution, as the proponent of the other-crime evidence, was required to establish by clear and convincing evidence, rather than by a preponderance of the evidence, the occurrence of the other crime and the defendant's identity as the perpetrator of that crime. In addition, the court of appeals incorrectly held that the trial court was required to determine the admissibility of other-crime evidence by analyzing the evidence related to the other crime separately and independently of other evidence rather than by considering all the evidence in the case.

█ A review of the record demonstrates that the trial court did not err in admitting the prosecution's other-crime evidence in this case. In admitting this other-crime evidence, the trial court did not base its ruling on its determination that the jury could reasonably find by a preponderance of the evidence that the conditionally relevant facts were established. Rather, the trial court, before admitting the other-crime evidence, satisfied itself that the prosecution established all preliminary conditions relating to the admissibility of that evidence. Although the trial court erred in utilizing the "clear and convincing" standard of proof in its evidentiary rule, the error in that respect inured to the benefit of the defendant.

Under the preponderance-of-evidence standard, the evidence before the trial court at the time of the court's evidentiary ruling demonstrated not only that the other crimes occurred but also that the defendant committed each of these other offenses. The evidence also satisfied the four-part relevancy test for the admissibility of other-crime evidence. First, the other-crime evidence related to a material fact in the case—the identity of the defendant as the perpetrator of the murder charged against him. Second, the other-crime evidence was logically relevant to the issue of identity, inasmuch as it had a tendency to make the existence of identity more probable with the evidence than without it. Third, the logical relevancy of the evidence was independent of any inference that the defendant was a person of bad character and thus, inferentially, had committed the crime charged against him in conformity with his bad character.

The logical nexus between the other-crime evidence and the material issue of identification was clearly manifested in the distinctive manner in which the crime charged and the other crimes were committed. In each instance, the defendant was involved with the victim in a personal relationship which was either about to terminate or was substantially deteriorating at the time of the crime. The defendant in each instance had free access to the victim's residence and was the last person known to have been with the victim prior to the discovery of the victim's body. Of par-

ticular significance is the fact that in each instance the victim was strangled to death and the victim's nude or semi-nude body was covered with bedding up to the neck. Although there obviously were some differences in the circumstances surrounding each offense, it is not essential that the means of committing the other crimes replicate in all respects the manner in which the crime charged was committed. Rather, what is of critical significance is that the evidence of other crimes and the crime charged, considered in its totality, manifest significantly distinctive features to make it more likely than it would be without the other-crime evidence that the person who committed the other crimes also committed the offense charged.

Last, we are satisfied that the trial court did not err in determining that the probative value of the other-crime evidence was not substantially outweighed by the danger of unfair prejudice to the defendant. To be sure, any evidence that strengthens the prosecution's case carries with it some degree of disadvantage to an accused. This is especially true in the case of other-crime evidence. In the instant case, however, the trial court was clearly cognizant of the risk of prejudice posed by the other-crime evidence and balanced that risk against the probative value of the evidence in ruling that the probative value of the other-crime evidence was not outweighed by the danger of unfair prejudice to the defendant. In light of the obvious significance of the other-crime evidence to the critical issue of identity, we cannot say that the trial court erred in its evidentiary ruling.

The judgment of the court of appeals is reversed, and the judgment of conviction entered by the trial court is hereby reinstated.