Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 9, 2020

**2020 CO 78**

**No. 16SC391, *People v. Williams* — Criminal Law — Evidence — Uncharged Misconduct — Relevance.**

The People petitioned for review of the court of appeals' judgment reversing Williams's conviction for distributing a schedule II controlled substance. At trial, the district court admitted evidence pursuant to CRE 404(b) of a prior incident in which Williams pled guilty to selling cocaine. The court of appeals found that the district court abused its discretion in admitting this evidence for the limited purposes of demonstrating "modus operandi and common plan, scheme, or design," largely on the grounds that the evidence in question did not meet the strictures imposed by prior case law for admitting uncharged misconduct evidence pursuant to CRE 404(b) for these particular purposes, and because the error was not harmless.

The supreme court affirms, holding that because the incremental probative value of this evidence relative to any material issue in the case was substantially

outweighed by the danger that it would be unfairly prejudicial, the district court abused its discretion in admitting it. Although for different reasons, the judgment of the court of appeals is therefore affirmed.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 78

### Supreme Court Case No. 16SC391
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 13CA295

### Petitioner:

The People of the State of Colorado,

v.

### Respondent:

Barnett Williams.

### Judgment Affirmed
*en banc*
November 9, 2020

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Rebecca A. Adams, Senior Assistant Attorney General
*Denver, Colorado*

**Attorney for Respondent:**
Megan A. Ring, State Public Defender
Inga K. Nelson, Deputy State Public Defender
*Denver, Colorado*

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.

¶1 The People petitioned for review of the court of appeals' judgment reversing Williams's conviction for distributing a schedule II controlled substance. At trial, the district court admitted evidence pursuant to CRE 404(b) of a prior incident in which Williams pled guilty to selling cocaine. The court of appeals found that the district court abused its discretion in admitting this evidence for the limited purposes of demonstrating "modus operandi and common plan, scheme, or design," largely on the grounds that the evidence in question did not meet the strictures imposed by prior case law for admitting uncharged misconduct evidence pursuant to CRE 404(b) for these particular purposes, and because the error was not harmless.

¶2 Because the incremental probative value of this evidence relative to any material issue in the case was substantially outweighed by the danger that it would be unfairly prejudicial, the district court abused its discretion in admitting it. Although for different reasons, the judgment of the court of appeals is therefore affirmed.

**I.**

¶3 The defendant, Barnett Williams, was tried and convicted of class three felony distribution of a schedule II controlled substance. He was sentenced to ten years confinement, to be served in a community corrections program.

¶4    At trial the prosecution presented the testimony of a paid informant who claimed that she participated in a controlled purchase of crack cocaine from the defendant; three police officers who testified to arranging the controlled buy with the informant, including strip searching her both before and after she went into an apartment they identified as that of the defendant, concealing a listening device on her, and retrieving from her upon emerging from the building a small rock, apparently of crack cocaine, wrapped in a piece of paper, in lieu of the $40 she had taken inside with her; the police chemist who tested the substance, determining it to be cocaine; and the officer who later executed a search of the apartment in question, finding a balance scale. Although defense counsel emphasized, through argument and cross-examination, the informant's motive to lie and expressly questioned the sufficiency of the prosecution's evidence, including even whether there was adequate proof that the defendant lived at the apartment in question, the defense did not present any witnesses or evidence on the defendant's behalf and did not offer a theory of the case instruction.

¶5    In addition to evidence of the charged offense, after granting the prosecution's pretrial motion pursuant to CRE 404(b), the court permitted it to present evidence of an earlier sale of crack cocaine to which the defendant had previously pled guilty. With regard to this uncharged offense, the prosecution presented the testimony of a different paid informant, who claimed to have

3

similarly participated in a controlled purchase of crack cocaine from the defendant, several months earlier and at a different apartment within a mile of the charged offense; the police officer who was her "handler" on that occasion; and the same police chemist, who determined the substances to be cocaine on both occasions.

¶6 On appeal, the intermediate appellate court reversed the defendant's conviction, finding admission of the uncharged criminal misconduct evidence in this case to have been an abuse of discretion amounting to reversible error. We granted the People's petition for further review, to consider in particular whether the court of appeals erred in finding that "modus operandi" evidence is admissible pursuant to CRE 404(b) *only* to prove the identity of the person who committed a crime, which it found not to have been a material issue in this case, and in finding that "common plan" evidence is admissible pursuant to CRE 404(b) *only* where the defendant is shown to have had a plan to engage in the crime for which he is on trial, at the time he engaged in his prior crime.

## II.

¶7 The admissibility of evidence of uncharged criminal misconduct has, for a combination of evidentiary and policy reasons, long been strictly limited in both English and American law. *See People v. Rath*, 44 P.3d 1033, 1038 (Colo. 2002). In light of the obvious substantial impact of allowing a jury to even hear accusations

4

of prior criminal conduct by the defendant, more than a half-century ago this court mandated that any offer to introduce evidence of uncharged, similar crimes be made outside the presence of the jury and, if such evidence were found by the court to be admissible, that the jury be instructed on the limited purposes for which it could be considered, in prescribed terms designed to minimize the inevitable prejudicial impact. *See Stull v. People*, 344 P.2d 455, 458–59 (Colo. 1959). In 1980, with the adoption of our own version of the Federal Rules of Evidence, Rule 404(b) and related rules of the Colorado Rules of Evidence came to expressly govern the admissibility of evidence of crimes other than those that had been charged in the prosecution at hand.

¶8    It would, however, be another decade before this court had occasion to explain in detail the analysis required by these "new" rules and the ways they significantly altered the preexisting law relating to the admissibility of other-crime evidence. *See People v. Garner*, 806 P.2d 366, 372 (Colo. 1991); *People v. Spoto*, 795 P.2d 1314, 1319 (Colo. 1990)*; see also Rath*, 44 P.3d at 1038. In *Spoto* we articulated a framework for determining the relevancy of this kind of evidence within the scheme of the Rules, analyzing the requirements of CRE 401–404 in terms of four specific components, or evidentiary considerations. Less than a year later, in *Garner* we again applied this four-part analysis, this time embellishing it and refining the analysis of other-crime evidence under the Rules by contrasting

it with the pre-Rules analysis of the admissibility of what we had generally referred to in this jurisdiction as "similar transactions" evidence.

¶9 As we later characterized it in *Rath*, the *Spoto* framework for determining admissibility under the Rules of Evidence now requires four steps, or separate determinations. First, the other-crime evidence must be offered as relating to a material fact. *Rath*, 44 P.3d at 1038. Second, it must be logically relevant by tending to make that material fact more probable or less probable than would be the case without that evidence. *Id.* Third, its logical relevance must be independent of the intermediate inference prohibited by CRE 404(b), that is, the evidence of other crimes must be probative for some logical reason other than "that the defendant committed the crime charged because of the likelihood that he acted in conformity with his bad character." *Id.* (quoting *Spoto*, 795 P.2d at 1318). And fourth, the probative value of the evidence for that permissible reason must not be substantially outweighed by the danger of unfair prejudice created by admitting the other-crime evidence. *Id.*

¶10 In *Garner*, in rejecting the lower appellate court's analysis and reinstating the judgment of conviction in that case, we addressed several specific requirements of the decisional law upon which the appellate court relied, finding that "the Rules have significantly changed the preexisting law relating to the admissibility of other-crime evidence." 806 P.2d at 370. In that regard, we found,

for example, that the prosecution's burden of showing that the defendant actually committed the uncharged crime or act, which is required for its admission, had been reduced from the more onerous clear-and-convincing standard to a mere preponderance of the evidence standard. *Id.* Similarly, we found that the inclusionary formula of the rules of relevancy, permitting the admission of evidence *unless* its probative value is *substantially outweighed by* the danger of unfair prejudice, overruled the pre-Rules formulation of *People v. Honey*, 596 P.2d 751, 753–54 (Colo. 1979), by effectively inverting the policy choice concerning equipoise and creating a rule more favorable for admission. *Garner*, 806 P.2d at 371.

¶11 Perhaps most significantly, however, we highlighted the fact that before adoption of the Rules of Evidence, "Colorado decisional law adhered to the exclusionary principle that, subject to narrow exceptions, evidence of other crimes was not admissible as proof of the accused's guilt with respect to the crime charged," *id.* at 369; and by contrast, that CRE 404(b), consistent with the general principle enunciated in CRE 404(a), disallows evidence that an accused committed some other crime simply to prove that he acted in conformity with a character trait in committing the crime charged but expressly allows for the admission of other-crime evidence if relevant for some other purpose, including for example to demonstrate motive, opportunity, intent, preparation, plan, knowledge, identity,

7

or absence of mistake or accident. *Id.* at 373. In contrast to the former narrowly defined exceptions to a general rule of exclusion, we have therefore made clear that Rule 404(b) identifies a single purpose for which other-crime evidence must always be excluded and delineates a non-exclusive list of examples of other reasons for which other-crime evidence is not to be excluded if it is otherwise admissible according to the rules of relevance. *See Rath*, 44 P.3d at 1039.

¶12    While the basic reasons for excluding other-crime evidence set forth in *Stull* remain no less applicable today, *see Garner*, 806 P.2d at 372, rather than being safeguarded through narrowly defined exceptions to a general rule of exclusion, the evidentiary and policy interests militating against the wholesale admission of other-crime evidence are now advanced by implementing the four-part analysis of *Spoto*, and particularly its requirement that admission before a trier of fact be contingent upon the articulation of a precise evidential hypothesis by which a material fact can be permissibly inferred, independent of the use forbidden by CRE 404(b) and without being substantially outweighed by the inherently prejudicial impact of demonstrating the defendant's preexisting criminal character. The traditional litany of narrowly circumscribed exceptions of pre-Rules decisional law, to the extent there was ever agreement about their scope or boundaries in any event, therefore no longer limits the admissibility of other-crime evidence. By the same token, however, simply mouthing that litany, or some particular portion of

it, will necessarily fail to adequately articulate the precise evidential hypothesis upon which admissibility hinges.

¶13    The evidential hypothesis envisioned by this court in *Spoto*, which serves to postulate precisely how the proffered evidence of other criminal conduct can be probative of a particular material issue, demands considerably greater precision. While terms of ancient usage can often serve as useful shorthand, and prior decisional law purporting to define the scope of prior exceptions may well reflect collective wisdom concerning the relative probativeness and concomitant prejudice associated with demonstrating prior misconduct under particular circumstances and for particular purposes, they no longer constitute prerequisites for admissibility. *Compare Honey*, 596 P.2d at 753–54, *with Garner*, 806 P.2d at 373 –74, *and Spoto*, 795 P.2d at 1318–19.

¶14    In addition, while the "necessity" for other-crime evidence, required by pre-Rules decisional law as we had articulated in *Honey*, no longer appears as a separate consideration of admissibility, it nevertheless effectively remains integral to the analysis as a component part of the balance of probative value and prejudicial effect, as mandated by CRE 403. As we have often held, Rule 403's "probative value" is not considered in isolation but signifies the "marginal" or "incremental" probative value of evidence relative to the probative force of other evidence available in the case. *See Rath*, 44 P.3d at 1041; *Martin v. People*, 738 P.2d

9

789, 794 (Colo. 1987); Charles T. McCormick, 1 *McCormick on Evidence* § 190.11 (8th ed. 2020).  Therefore, in the fourth step of the analysis, the trial court must always consider the extent to which the proffered other-crime evidence adds logical force, independent of the proscribed inference from bad character, to the existing body of evidence proving the same material fact and must weigh that marginal probative value against the inherently prejudicial impact of allowing the trier of fact to hear that the defendant has committed other crimes and is therefore known to be a person of criminal character.

¶15    While the approach of the Rules of Evidence therefore eschews any mechanical limitation to narrowly defined pigeonholes, it nevertheless requires for admission that the court be able to find a precise evidential hypothesis according to which the proffered other-crime evidence will not add substantially more to the unfair prejudice side of the balance than it will add probativeness, independent of any inference that the defendant acted in conformity with his criminal character, to the fund of other evidence already probative of the material fact in question.  The policy shift with regard to equipoise, or near equipoise, in the balance of probative value and prejudicial effect clearly creates a rule more favorable to admission than was previously the case in this jurisdiction, but the Rules in no way suggest even the slightest disregard for the long-recognized natural inclination of jurors to either impute to a defendant guilt of the charged

crime for the reason that he is already known to be a person of criminal character, or to simply punish him for being a criminal, whether or not they are convinced beyond a reasonable doubt that he committed the particular crimes with which he is currently charged. Any consideration whether to admit evidence of prior criminality must therefore always account for this serious counterweight to admissibility by which incremental probativeness must not be substantially outweighed.

**III.**

¶16 The intermediate appellate court below found that the trial court abused its discretion in admitting other-crime evidence in this case, in the first instance because that evidence did not meet the strictures of the designated purposes for which it was admitted, according to decisional law from other jurisdictions and from this court pre-dating adoption of the Rules of Evidence. More specifically, it found that evidence admitted to demonstrate "modus operandi," other than as may be authorized by statute for specified classes of crimes like sexual offenses and domestic violence, can be relevant only to the question of "identity," which it considered not to be at issue in this case and therefore to be immaterial. In the same vein, it held that other-crime evidence could be admissible to prove a "common plan, scheme, or design" only where it could be shown that the plan was devised before the prior crime was committed and included within the plan

11

the commission of the charged crime. For the reasons articulated above, this was error, which should have been clear at least since our exegesis of the Rules' treatment of other-crime evidence in *Spoto* and *Garner*.

¶17 Contrary to the understanding of the court of appeals, our holding in *Rath* was based entirely on an analysis of the Colorado Rules of Evidence as explained by *Spoto* and *Garner*. As we also made express, whether or not section 16-10-301 of the revised statutes might have permitted other-crime evidence even more liberally in prosecutions for sexual offenses, it was enough for the analysis in *Rath* that the district court did not abuse its discretion in admitting the other-crime evidence at issue in that case according to CRE 404(b). *Rath*, 44 P.3d at 1038 n.2. Similarly, our analysis in *People v. Jones*, 2013 CO 59, 311 P.3d 274, expressly relied on both the statute and Rules, without distinguishing the one from the other, and in no way suggested a different analysis for sexual offenses based solely on the statute. Nor was the 404(b) rationale for admission in those cases in any way contingent on the crimes in those cases being sexual offenses.

¶18 We agree, however, that the district court abused its discretion in admitting evidence of the separate drug transaction in this case, for the separate reason that the court was not presented with and failed to articulate any precise evidential hypothesis by which a material fact could be permissibly inferred, without its incremental probative force being substantially outweighed by its unfairly

12

prejudicial impact. The only ultimate fact for which the other-crime evidence was offered was the identity of the accused as the perpetrator of the charged offense. As we explained in *Rath*, proof of "identity" actually includes two separate aspects, or component parts, each involving a distinctly different matter of proof: on the one hand, that the defendant, rather than someone else, was the person who was present at the time and place of the charged offense, such that if the criminal act was committed at all, it was committed by him; and on the other, what has at times been characterized as proof of the corpus delicti—that the criminal act as alleged in the charge was actually committed. *Rath*, 44 P.3d at 1040; Edward J. Imwinkelried, 1 *Uncharged Misconduct Evidence* §§ 3:2, 4:2 (2020). Although both implicate proof that the defendant committed the charged crime, each clearly requires a substantially different evidential hypothesis to justify its proof by other-crime evidence.

¶19    With regard to proof that the defendant was the person with whom the confidential informant had contact in this case, even assuming maximum probative value and minimum prejudicial effect, as we must on appellate review, *see Rath*, 44 P.3d at 1043, the incremental probative value of the other-crime evidence admitted at trial was nevertheless substantially outweighed by its prejudicial effect. Reading the record generously in favor of admission, the evidential hypothesis for proving the identity of the defendant that was offered

13

and accepted by the trial court amounted to a proposition that evidence of the defendant's act of selling a small amount of drugs to a paid informant within the prior six months, from an apartment within a mile of the alleged crime scene in this case, would, by demonstrating his design to sell or method of selling small amounts of drugs from an apartment, have a tendency to make it more probable than it would be without that evidence, that the defendant was in fact the person who sold a small amount of drugs to the paid informant as charged in this case; and furthermore, that the marginal, or incremental, probative value of this evidence when considered with the other evidence of identity would not be substantially outweighed by the tendency it would also have to lead the jury to find the defendant guilty for an unfair or improper reason.

¶20 The probative force of demonstrating a design to commit, or regular technique or method of committing, crimes like a charged offense derives from the uniqueness, regularity, and similarity of the crimes. *See generally* McCormick, *supra* § 190.3; Imwinkelried, *supra* § 5.8. As has long been recognized, the more unique the method and the more often the defendant has in the past used such a method to commit crimes like the one with which he is currently charged, the more reasonable will be the inference that the defendant, rather than anyone else with the opportunity to do so, committed the offense in question. *See Rath*, 44 P.3d at 1042. As the district court itself recognized, however, there is nothing remotely

unique or uncommon about selling small amounts of cocaine from an apartment to strangers seeking to buy it. Because such crimes can be, and regularly are, committed by any number of people, a single instance of sale under these circumstances can hardly be characterized as demonstrative of a particular scheme or technique at all, much less one sufficiently unique to suggest that the defendant, rather than someone else, employed it on the occasion in question. While the force of the argument might be increased somewhat if it could be shown that the defendant was involved in an ongoing enterprise of selling cocaine from the apartment in question or that he had similarly sold cocaine from the same location to the same victim in the past, no such evidence was offered or admitted.

¶21 Although the defense did not concede that the defendant was the person in the apartment in question with whom the informant spoke, the question of identification would be no less material if it had. *See Rath*, 44 P.3d at 1040 n.4 ("Whether a material fact is contested clearly affects the need for or incremental probative value of the evidence offered to prove it, but it does not make the fact itself any less material or the evidence offered to prove it any less logically probative."). It was nevertheless significant in balancing the probative value and prejudicial effect of the other-crime evidence in this case that the prosecution was able to present the eyewitness testimony of the informant herself, as well as a recording of their conversation from which an officer to whom the defendant was

15

known identified his voice. As lopsided as the balance of probative value and prejudicial effect would have been in any event, the imbalance of *incremental* probative value and prejudicial effect was even greater in light of the other available evidence of identification. Considered most favorably, the evidence of the defendant's earlier drug sale contributed little if any additional probative value to the fund of other evidence probative of identification, but it clearly added significant unfair prejudice by simply making the jury aware of the defendant's preexisting criminal character.

¶22   While the prosecution was required to prove not only that the defendant was the person in the apartment with the informant but also that he distributed cocaine to her, a satisfactory evidential hypothesis can no more be devised for this aspect of the required element of identification than for the other. As we have noted in the past, proof of the commission of the corpus delicti by showing prior similar behavior of the accused may be somewhat less dependent on the uniqueness of that behavior, but it is nevertheless dependent upon the demonstration of a pattern of past conduct sufficient to permit the inference from similar preparatory conduct of the defendant's intent to complete the criminal act in question, and therefore the increased likelihood that the criminal act was actually committed. *See Rath*, 44 P.3d at 1042. Here, evidence of similar preparatory conduct demonstrating a design to commit crimes like the one

charged was virtually nonexistent, consisting at most of one prior example of admitting a stranger who had come to the defendant's apartment seeking to buy a small amount of cocaine.

¶23 While other-crime evidence with sufficient uniqueness, frequency, and similarity to the charged offense might be probative of credibility in the absence of physical evidence of a crime or testimonial evidence beyond that of a complaining witness, this case presents no such scenario. Rather, in this case the assertion of the informant that the defendant sold her drugs was corroborated by several officers who claimed to perform strip-searches of her both before and after the encounter, verifying that she no longer had the money given her before entering and instead possessed a wrapped rock of apparent crack cocaine upon returning, which was not present upon entry and which, therefore, must have been acquired in the apartment building. It would be difficult to conceive of an evidential hypothesis according to which prior drug dealing by the defendant could be meaningfully probative of either a lack of collusion between the informant and police or incompetence or perjury on the part of the police, and none was offered by either the prosecution or the court. Quite the contrary, an awareness that the defendant was known to be a drug dealer would arguably suggest that the police had a reason to believe him deserving of punishment, whether the evidence in this case was sufficient or not.

¶24 Finally, while the other evidence against the defendant was strong, the erroneous admission of uncharged criminal misconduct evidence in this case cannot be characterized as harmless. Error can be disregarded as harmless only if the prosecution demonstrates that it did not adversely affect a substantial right of the defendant, which we have held in the past to require a demonstration that there is no reasonable probability the error adversely affected the outcome. *Yusem v. People*, 210 P.3d 458, 469–70 (Colo. 2009) (citing *People v. Garcia*, 28 P.3d 340, 344 (Colo. 2001)). Despite various evidence corroborative of the paid informant's testimony, she was the only first-hand witness to the crime, and therefore the guilt or innocence of the accused rested on her credibility. Where, as here, a substantial amount of evidence of prior criminal conduct was presented with little value other than demonstrating that the defendant had sold drugs in the past, it cannot be said that there is no reasonable probability the jury's choice to believe the informant was affected by the erroneous admission of that evidence.

**IV.**

¶25 Because the incremental probative value of this evidence relative to any material issue in the case was substantially outweighed by the danger that it would be unfairly prejudicial, the district court abused its discretion in admitting it. Although for different reasons, the judgment of the court of appeals is therefore affirmed.

18