22CA0979 Peo v Herrera 10-10-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0979
Mesa County District Court No. 21CR1583
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Johnny Ralph Herrera, Sr.,

Defendant-Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Tow and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 10, 2024

Philip J. Weiser, Attorney General, Frank R. Lawson, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Johnny Ralph Herrera, Sr., appeals the trial court's order imposing restitution.  He contends that the order must be vacated because the prosecution did not comply with its statutory obligation regarding restitution and the prosecution failed to sufficiently prove that he proximately caused the damages sustained.  We affirm.

## I.    Background

¶ 2    On October 15, 2021, Deputy Pratt tried to conduct a traffic stop of Herrera's vehicle, but Herrera refused to stop for the officer. During the ensuing pursuit, Deputy Pratt, Deputy Rolbiecki, and Deputy Davidson each attempted a "PIT maneuver"[1] to stop the vehicle.  The maneuver involved contacting the back of Herrera's car with the front of the patrol car.  Ultimately, Davidson successfully stopped Herrera's car by using a PIT maneuver and Herrera was taken into custody.

¶ 3    Herrera was charged with vehicular eluding, attempted second degree assault, driving under restraint, reckless endangerment, violation of a traffic control signal, eluding a police officer, speeding,

---

[1] PIT is short for "precision immobilization technique.  *People v. McMinn*, 2013 COA 94, ¶ 5.

and possession of drug paraphernalia. He pleaded guilty to vehicular eluding and an added count of attempted third degree assault in exchange for the dismissal of the remaining charges. The plea agreement stated that the dismissed charges could be considered for restitution purposes.

¶ 4 At the January 25, 2022, sentencing hearing, the prosecutor asked that restitution be imposed and that he be afforded additional time to submit a request for a restitution amount. The trial court imposed a prison sentence, ordered Herrera to pay restitution, and granted the prosecution twenty-one days from sentencing to submit a restitution amount request.

¶ 5 On February 3, 2022, the prosecutor filed a motion for restitution in the amount of $12,885.74 to repair the damage caused to the patrol cars. The motion included a victim impact statement and invoices in support of the requested amount. The victim impact statement indicated that the repair costs for one of the patrol cars was not final because the needed repairs had not yet been completed. Herrera objected to the requested restitution amount, and the court set a hearing.

¶ 6     At the March 2, 2022, restitution hearing, the prosecutor elicited testimony that the remaining repairs were completed a week or two prior to the hearing and that the final amount paid to repair the three vehicles was $23,549.22.  The trial court ordered Herrera to pay that amount.

## II.     Statutory Violation

¶ 7     Herrera asserts that the restitution order must be vacated because the trial court erroneously allowed the prosecution to submit its restitution information after sentencing without demonstrating that the information was not available at or before sentencing.  He claims that he is prejudiced by the error because he owes $23,549.22 in restitution.  We are not persuaded.

¶ 8     The restitution statute requires every order of conviction to include one of four types of restitution orders.  § 18-1.3-603(1), C.R.S. 2024; *People v. Weeks*, 2021 CO 75, ¶ 3.  As relevant here, section 18-1.3-603(1)(b) requires an order of conviction to include "[a]n order that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction,

unless good cause is shown for extending the time period by which the restitution amount shall be determined."

¶ 9 "The court shall base its order for restitution upon information presented to the court by the prosecuting attorney, who shall compile such information through victim impact statements or other means to determine the amount of restitution and the identities of the victims." § 18-1.3-603(2)(a). "[T]he prosecuting attorney shall present this information to the court prior to the order of conviction or within ninety-one days, if it is not available prior to the order of conviction." *Id.*

¶ 10 A division of this court concluded that section 18-1.3-603(2)(a) imposes an obligation on the prosecution to use reasonable diligence in determining the amount of restitution it will request prior to the entry of the order of conviction. *People v. Brassill*, 2024 COA 19, ¶¶ 1, 30, 45. Another division further held that a trial court errs when it extends the prosecutor's deadline to present restitution information until after sentencing in the absence of a demonstration that the restitution information was unavailable before the sentencing hearing. *People v. Martinez Rubier*, 2024 COA 67, ¶¶ 3-4, 21, 39, 41.

4

¶ 11    Initially, we reject Herrera's assertion that the restitution order must be vacated because the prosecution's failure to submit the restitution information at or before sentencing divested the trial court of authority to enter the order. *See id.* at ¶¶ 46-47 (despite the prosecution's noncompliance with section 18-1.3-603(2), the trial court entered a restitution order within section 18-1.3-603(1)(b)'s ninety-one-day deadline and, therefore, was not deprived of authority to act on restitution); *Brassill,* ¶¶ 57-58.

¶ 12    We further conclude that the trial court did not err by finding that the prosecution sufficiently demonstrated that it exercised reasonable diligence in obtaining the restitution information before sentencing and that the information was not available at sentencing. The prosecutor represented at the sentencing hearing that the patrol cars had sustained damaged and that, "although the Victim Impact Statement has been requested, it has not yet been received." The prosecutor said that he needed additional time to "secure the itemized group of the damages suffered by . . . [the] Mesa County Sheriff's Department . . . and figure out if we can have a[n] agreement or if we need to request a hearing."

¶ 13    Because the prosecutor asked for an extension of time to file the restitution information and represented that, despite his office's efforts,[2] complete information had not yet been received, we conclude that the trial court's decision to allow the prosecutor to file the restitution information after sentencing was not error.

## III.    Proximate Causation

¶ 14    Herrera next contends that the prosecution failed to establish that he proximately caused the damage to the three patrol cars. Specifically, he argues that "the deputies' intentional decision to repeatedly crash their patrol cars into Mr. Herrera's car was grossly negligent, unforeseeable, and constituted an independent intervening cause." We disagree.

---

[2] As discussed, we find no error in the trial court's reliance on the prosecutor's representation that itemized damages were not complete (and therefore unavailable to the prosecution). But we also note from our review of the record that the cover letter from the District Attorney's office indicates the victim impact statement form was not sent to the Mesa County Sheriff's Risk Management Office until January 26, 2022 — one day *after* the sentencing hearing. Though that raises concern in light of the prosecutor's representation that "although the Victim Impact Statement has been requested, it has not yet been received," it does not alter our ultimate conclusion. It is undisputed that the repairs had not been completed at the time of sentencing so complete information was not available to the prosecution at that time.

¶ 15    A trial court may order restitution for "any pecuniary loss suffered by a victim," which includes, as relevant here, "losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money."  § 18-1.3-602(3)(a), C.R.S. 2024; *see also* § 18-1.3-603(1)(a).

¶ 16    "The prosecution bears the burden of proving, by a preponderance of the evidence, both the amount of restitution owed and that the victim's losses were proximately caused by the defendant."  *People v. Perez*, 2017 COA 52, ¶ 10.  "A fact is established by a preponderance of the evidence when, upon consideration of all the evidence, the existence of that fact is more probable than its nonexistence."  *People v. Garner*, 806 P.2d 366, 370 (Colo. 1991).  In the restitution context, proximate causation is defined as a cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained.  *People v. Dyson*, 2021 COA 57, ¶ 13.

¶ 17    However, unlawful conduct that is broken by an independent intervening cause cannot be the proximate cause of damages to another.  *Martinez v. People*, 2024 CO 6M, ¶ 13.  To qualify as an

7

intervening cause, an event must be unforeseeable and one in which the accused does not participate. *Id.* "Simple negligence is foreseeable and does not constitute an independent intervening cause; gross negligence is not foreseeable and thus may serve as an independent intervening cause." *People v. Sieck*, 2014 COA 23, ¶ 9. Gross negligence is willful and wanton conduct, such as actions committed recklessly with conscious disregard for the safety of others. *Martinez*, ¶ 14.

¶ 18 We will not disturb a trial court's determination of proximate cause for restitution purposes unless it is clearly erroneous. *Id.* at ¶¶ 3, 32. Under the clear error standard, we must affirm the court's findings unless they are without support in the record. *Id.* at ¶ 34.

¶ 19 In its order, the trial court found that Herrera's "criminal actions of eluding law enforcement and placing the public in danger proximately caused the damages to the three patrol vehicles." The court noted that, when a person is eluding law enforcement, "it is within the natural and probable sequence of events that law enforcement will attempt to halt the eluder."

8

¶ 20     The record supports the trial court's finding that Herrera's criminal conduct proximately caused the damage to the patrol cars. The trial court heard testimony from the Mesa County Risk Administrator and Deputy Pratt.

¶ 21     The Mesa County Risk Administrator testified that during the underlying incident, the three patrol cars driven by Pratt, Rolbiecki, and Davidson sustained damage. He said that he was not aware of any record of unrelated damage to the vehicles that predated the incident.

¶ 22     Pratt testified that all three patrol cars sustained damage as a result of the PIT maneuvers used to stop Herrera's vehicle and the attempts to pin the vehicle to prevent Herrera from fleeing. Pratt offered extensive detail about Herrera's initial failure to stop and subsequent erratic driving. He explained that Herrera posed a safety risk to other drivers and described his attempt to stop Herrera by way of a PIT maneuver before the pursuit entered a busy intersection. Pratt testified that Herrera was able to drive away after Pratt attempted to pin Herrera's car, causing a second deputy (Rolbiecki) to attempt a PIT maneuver, which was again unsuccessful. Pratt explained that Herrera eluded again, drove

9

down a large embankment onto another road, and was ultimately stopped by a third deputy (Davidson), who successfully executed a PIT maneuver.

¶ 23    This testimony provides ample record support that the officers' PIT maneuvers and attempts to pin Herrera's vehicle were foreseeable and that any negligent conduct did not rise to the level of gross negligence.  Indeed, Pratt testified that a PIT maneuver was the preferred technique used by law enforcement to stop an eluding vehicle and that the PIT maneuver was the safest way to stop an eluding vehicle and to ensure the safety of others.  Pratt also testified that Rolbiecki's final strike to pin Herrera's vehicle after it was stopped by Davidson's PIT maneuver was necessary because Herrera demonstrated an intent to continue eluding the officers.

¶ 24    The court acknowledged Pratt's incorrect statements to the other deputies that Herrera had struck his patrol car when in fact Herrera had swerved toward him but made no contact.  But it nevertheless found that, in light of Herrera's observed reckless driving, the misrepresentation did not lessen its determination of proximate cause.

¶ 25    To the extent Herrera argues that he was not the proximate cause of the damage because he did not participate in the event, he fails to adequately explain this assertion.  *People v. Houser*, 2020 COA 128, ¶ 24 (we will not consider a bald legal proposition presented without argument or development).

## IV.    Disposition

¶ 26    The order is affirmed.

JUDGE TOW and JUDGE SCHUTZ concur.