Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 22, 2022

**2022 CO 8**

**No. 20SC399, *Rojas v. People*—Res Gestae—Other Acts Evidence.**

In this opinion, the supreme court abolishes the common law res gestae doctrine in criminal cases in Colorado. In evaluating whether uncharged misconduct evidence triggers CRE 404(b), a trial court must first determine if the evidence is intrinsic or extrinsic to the charged offense. Intrinsic acts are those (1) that directly prove the charged offense or (2) that occurred contemporaneously with the charged offense and facilitated the commission of it. Evidence of acts that are intrinsic to the charged offense are exempt from CRE 404(b) because they are not "other" crimes, wrongs, or acts. Accordingly, courts should evaluate the admissibility of intrinsic evidence under CRE 401–403. If extrinsic evidence suggests bad character (and thus a propensity to commit the charged offense), it is admissible only as provided by CRE 404(b) and after analysis under *People v. Spoto*, 795 P.2d 1314, 1318–19 (Colo. 1990). Conversely, if extrinsic evidence does not suggest bad character, CRE 404(b) does not apply and admissibility is governed by CRE 401–403.

Applying this holding to the case before it, the supreme court concludes that the challenged evidence is an extrinsic act that implicates the defendant's character, and its admissibility is therefore governed by CRE 404(b) and *Spoto*. But because the trial court admitted the evidence under the doctrine of res gestae, it didn't conduct a CRE 404(b) analysis and didn't provide the requisite procedural safeguards. This constituted error. And because the error was not harmless, the judgment of the court of appeals, which affirmed the defendant's convictions, is reversed, and the case is remanded to the trial court for a new trial.

**2022 CO 8**

**Supreme Court Case No. 20SC399**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA126

**Petitioner:**

Brooke E. Rojas,

v.

**Respondent:**

The People of the State of Colorado.

**Judgment Reversed**
*en banc*
February 21, 2022

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Rachel K. Mercer, Deputy Public Defender
*Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Paul Koehler, Assistant Attorney General
*Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court, in which **JUSTICE MÁRQUEZ**, **JUSTICE GABRIEL**, **JUSTICE HART**, and **JUSTICE SAMOUR** joined.
**CHIEF JUSTICE BOATRIGHT**, joined by **JUSTICE BERKENKOTTER**, concurred in the judgment only.

JUSTICE HOOD delivered the Opinion of the Court.

¶1     Today, we discard a troublesome relic from Colorado's common law of evidence: the res gestae doctrine.

¶2     Although it has morphed over time, the res gestae doctrine these days is often used as a shortcut for admitting character evidence about criminal defendants.  While we seek to ensure that defendants are tried for the crimes with which they've been charged and not for seeming to have a propensity to engage in criminal conduct, "[c]riminal occurrences do not always take place on a sterile stage."  *People v. Lobato*, 530 P.2d 493, 496 (Colo. 1975).  So, res gestae evidence—septic though it sometimes may be—has been admitted because it is "linked in time and circumstances to the charged crime" or "is necessary to complete the story of the crime for the jury."  *Zapata v. People*, 2018 CO 82, ¶ 58, 428 P.3d 517, 530 (quoting *People v. Skufca*, 176 P.3d 83, 86 (Colo. 2008)); *People v. Quintana*, 882 P.2d 1366, 1373 (Colo. 1994).  In short, we have treated res gestae evidence, in various ways, as intrinsic to the charged offenses and therefore not subject to the rules limiting the admissibility of extrinsic, uncharged misconduct evidence.  But because res gestae is so ill-defined, such uncharged misconduct evidence too often dodges the rules and slips into cases without the requisite scrutiny.

¶3    It is time for us to bury res gestae. This court's adoption of the Colorado Rules of Evidence more than four decades ago should have rendered the res gestae doctrine obsolete. Under the Rules, if evidence is probative of a material fact, then it is relevant and presumptively admissible. CRE 401, 402. As a general matter, only when the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice does it need to be excluded. CRE 403. And uncharged misconduct evidence that meets certain requirements can be admitted to show, for example, that a defendant had the motive, opportunity, or intent to commit the charged offense. CRE 404(b). By continuing to rely on res gestae as a standalone basis for admissibility and allowing the vagueness of res gestae to persist next to these more analytically demanding rules of relevancy, we have created a breeding ground for confusion, inconsistency, and unfairness.

¶4    Therefore, we join other jurisdictions that have abandoned this always-nebulous and long-superfluous doctrine. In the case at hand, our decision to abolish the res gestae doctrine in criminal cases prompts us to reverse the judgment of the court of appeals and remand for a new trial.[1]

---

[1] Whether res gestae should survive in civil actions, where it crops up far less frequently, is not before us. Therefore, we pass no judgment on that issue in this opinion.

## I. Facts and Procedural History

¶5 This is the second time we have reviewed this case. *See People v. Rojas*, 2019 CO 86M, 450 P.3d 719 ("*Rojas I*"). Brooke Rojas was convicted of two counts of theft based on her improper receipt of food stamp benefits.

¶6 Rojas initially applied for food stamp benefits from the Larimer County Department of Human Services (the "Department") in August 2012 when she had no income. She received a recertification letter in December, which she submitted in mid-January 2013, indicating that she still had no income. And although she had not yet received a paycheck when she submitted the recertification letter, Rojas had started a new job on January 1.

¶7 Rojas continued receiving food stamp benefits every month until July, when she inadvertently allowed them to lapse. She reapplied in August 2013. Although still working, Rojas reported that she had no income. The Department checked Rojas's employment status in connection with the August application and learned that she was making about $55,000 a year (to support a family of seven). The Department determined that Rojas had received $5,632 in benefits to which she was not legally entitled.

¶8 The prosecution charged Rojas with two counts of theft under section 18-4-401(1)(a), C.R.S. (2021). The first count was for the benefits she

4

received between February 1, 2013, and June 4, 2013; the second count was for the benefits she received between June 5, 2013, and July 31, 2013.[2]

¶9 At trial, Rojas's defense was that she lacked the requisite culpable mental state—she didn't knowingly deceive the government; she just misunderstood the forms. The prosecution's theory was that Rojas's misstatements on the January recertification form were not an oversight but rather a knowing attempt to receive benefits to which she wasn't legally entitled.

¶10 Before trial, Rojas objected to the prosecution's proposed admission of the August 2013 application because it exceeded the time period of the charged offenses and didn't lead to the receipt of any benefits. The prosecution countered that the application was admissible as res gestae evidence—to show how the investigation began—and as evidence of specific intent. The court found it relevant as circumstantial evidence of Rojas's mental state.

¶11 On the morning of trial, Rojas renewed her objection to introduction of the August 2013 application, again asserting that it was irrelevant and unfairly

---

[2] The legislature amended the theft statute, effective June 5, 2013. Ch. 373, sec. 1, § 18-4-401, 2013 Colo. Sess. Laws 2196. Because the amendment became effective during the alleged offense here, the prosecution charged Rojas with two counts of theft rather than one—one count for the period governed by the old statute and one count for the period governed by the amended statute.

prejudicial. She further argued the application was impermissible 404(b) evidence. And she requested a limiting instruction to explain to the jurors that they may consider the application "for purposes of explaining how the investigation of Ms. Rojas began only and . . . not . . . for any other purpose." The court determined that the application was not 404(b) evidence, was relevant to the charged offenses, and was admissible. The jury received no limiting instruction.

¶12 The prosecution questioned Rojas about the August 2013 application during her testimony, highlighting that she knew she was employed at that time yet still indicated on the form that she was not. The prosecution also discussed the August 2013 application in its opening and closing arguments as evidence of Rojas's intent.

¶13 A jury convicted Rojas of two counts of theft under the general theft statute for obtaining food stamp benefits to which she was not legally entitled. Rojas appealed, and a division of the court of appeals vacated the convictions. *People v. Rojas*, 2018 COA 20, ¶ 40, 490 P.3d 391, 398. We granted certiorari to review whether the legislature had "created an independent criminal offense for food stamp theft that abrogated the State's authority to prosecute under the general theft statute." *Rojas I*, ¶ 9 n.1, 450 P.3d at 721 n.1. Concluding it had not, we reversed the court of appeals' judgment and remanded for the division to consider any remaining issues on appeal. *Id.* at ¶ 28, 450 P.3d at 724.

¶14    On remand, the division addressed the three remaining contentions and affirmed Rojas's convictions, but it remanded for resentencing and correction of the mittimus to reflect statutory changes that reduced the felony level of her offenses. *People v. Rojas*, 2020 COA 61, ¶ 32, 490 P.3d 744, 749 ("*Rojas II*"). Rojas again petitioned this court for certiorari review, which we granted.[3]

## II. Analysis

¶15    After identifying the standard of review, we describe the evolution of the res gestae doctrine in Colorado. We then consider some of the criticism of the doctrine before concluding that the modern Rules of Evidence have rendered the res gestae doctrine superfluous. In the interest of providing guidance going forward, we also discuss what should trigger 404(b) scrutiny under the modern Rules.

---

[3] We granted certiorari to review the following issues:

1. Whether evidence that petitioner committed a similar offense, after the charged offense, is admissible without a limiting instruction, under the res gestae doctrine, to prove that she committed the charged offense.

2. Whether this court should abolish the res gestae doctrine.

7

## A. Standard of Review

¶16    We review a trial court's evidentiary rulings for an abuse of discretion. *Venalonzo v. People*, 2017 CO 9, ¶ 15, 388 P.3d 868, 873. A trial court abuses its discretion when its ruling is based on an erroneous view of the law. *People v. Wadle*, 97 P.3d 932, 936 (Colo. 2004).

¶17    In reviewing a trial court's ruling, appellate courts ordinarily adhere to precedent under the doctrine of stare decisis. *See Love v. Klosky*, 2018 CO 20, ¶ 14, 413 P.3d 1267, 1270. However, the doctrine is not so inflexible that we can't reevaluate our precedent where "we are 'clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come from departing from precedent.'" *McShane v. Stirling Ranch Prop. Owners Ass'n, Inc.*, 2017 CO 38, ¶ 26, 393 P.3d 978, 984 (quoting *People v. Blehm*, 983 P.2d 779, 788 (Colo. 1999)); *People v. LaRosa*, 2013 CO 2, ¶¶ 30–31, 293 P.3d 567, 574–75 (departing from stare decisis after concluding there were sound reasons for doing so).

## B. The Evolution of the Res Gestae Doctrine in Colorado

¶18    Res gestae has deep roots in American common law. The Supreme Court first referenced the doctrine in 1817, *Leeds v. Marine Ins. Co.*, 15 U.S. 380, 383 (1817), and Colorado courts have recognized it since at least the 1870s, *see Doane v. Glenn*, 1 Colo. 495, 499–501 (1872), *rev'd on other grounds by Doane v. Glenn*, 88 U.S. 33

8

(1874). The Latin phrase, which means "things done," *Res Gestae*, Black's Law Dictionary (11th ed. 2019), encompassed evidence that was necessary to understand the charged crime:

> Res gestae may be broadly defined as matter incidental to a main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of it, and without a knowledge of which the main fact might not be properly understood. They are the events themselves speaking through the instinctive words and acts of participants; the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it and serve to illustrate its character.

*Denver City Tramway Co. v. Brumley*, 116 P. 1051, 1052–53 (Colo. 1911); *see also Graves v. People*, 32 P. 63, 65 (Colo. 1893) ("Res gestae are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants under the immediate spur of a transaction becomes thus part of the transaction, because it is then the transaction that thus speaks." (quoting Francis Wharton, *A Treatise on the Law of Evidence in Criminal Issues* § 262 (9th ed. 1884))).

¶19 In these early formulations, res gestae served primarily as an exception to the general prohibition against hearsay. 2 Kenneth S. Broun et al., *McCormick on Evidence* § 268 (Robert P. Mosteller ed., 8th ed. 2020). Courts admitted statements made during or adjacent to the charged crime because it was assumed that the spontaneity of such statements rendered them reliable. *See Archina v. People*, 307 P.2d 1083, 1097 (Colo. 1957) ("Under the well-established doctrine of res

9

gestae, unsworn statements are admitted on the theory that they are spontaneous utterances, dominated and evoked by the transaction itself, and are not the result of premeditation, reflection or design."); *see also Zapata*, ¶ 71, 428 P.3d at 532 (Hart, J., specially concurring); H. Patrick Furman & Ann England, *The Expanding Use of the Res Gestae Doctrine*, 38 Colo. Law. 35, 35 (2009).

¶20    In this way, res gestae statements were treated much like the later-codified hearsay exceptions for present sense impressions, excited utterances, and then-existing mental states. *See* CRE 803(1)–(3); *People v. Dement*, 661 P.2d 675, 679 (Colo. 1983) (equating the requirements for admitting excited utterances under CRE 803 to the pre-adoption requirements for admitting res gestae statements), *abrogated on other grounds by People v. Fry*, 92 P.3d 970 (Colo. 2004); *see also McCormick on Evidence*, *supra*, § 268.

¶21    Even in its hearsay heyday, however, the vagueness of res gestae earned stiff rebukes from esteemed scholars and jurists. Professor Wigmore lamented that res gestae's "indefiniteness has served as a basis for rulings where it was easier for the judge to invoke this imposing catchword than to think through the real question involved." *Res Gestae*, Black's Law Dictionary (11th ed. 2019) (quoting John H. Wigmore, *A Students' Textbook of the Law of Evidence* 279 (1935)). Judge Learned Hand was equally blunt, observing that res gestae "is a phrase which has been accountable for so much confusion that it had best be denied any place

10

whatever in legal terminology; if it means anything but an unwillingness to think at all, what it covers cannot be put in less intelligible terms." *United States v. Matot*, 146 F.2d 197, 198 (2d Cir. 1944).

¶22 Despite these misgivings, res gestae gradually seeped into the realm of uncharged misconduct evidence. Like res gestae, the law limiting the use of uncharged misconduct evidence has a long history in American jurisprudence. Because such evidence "has inhering in it damning innuendo likely to beget prejudice in the minds of jurors" and "tends to inject collateral issues into a criminal case which are not unlikely to confuse and lead astray the jury," *Stull v. People*, 344 P.2d 455, 458 (Colo. 1959), *superseded by rule as stated in People v. Williams*, 2020 CO 78, ¶¶ 7–15, 475 P.3d 593, 595–98, its admissibility was "strictly limited" under the common law, *Williams*, ¶ 7, 475 P.3d at 596.

¶23 Thus, a conflict emerged. While the scope of res gestae evidence expanded, the common law governing other-acts evidence remained exclusionary. "Prior to the adoption of the Colorado Rules of Evidence, . . . Colorado decisional law adhered to the exclusionary principle that, subject to narrow exceptions, evidence of other crimes was not admissible as proof of the accused's guilt with respect to the crime charged." *People v. Garner*, 806 P.2d 366, 369 (Colo. 1991). When a trial court admitted other-acts evidence (or "similar transaction evidence," as this court then termed it), we required the court to employ a set of procedural protections

11

focusing the jury on the limited purpose for which the evidence was received.[4]

*Stull*, 344 P.2d at 458–59. The prosecution, as the proponent of such evidence, had to establish by "clear and convincing evidence" that the other act had occurred and that the defendant was the person who had engaged in the misconduct. *See People v. Botham*, 629 P.2d 589, 602 (Colo. 1981), *superseded by rule as stated in Garner*, 806 P.2d at 370. And we insisted that the court address three threshold issues:

> (1) is there a valid purpose for which the evidence is offered? (2) is the evidence relevant to a material issue of the case? (3) does the probative value of the evidence of the prior act, considering the other evidence which is relevant to the issue, outweigh the prejudice to the defendant which would result from its admission?

*People v. Honey*, 596 P.2d 751, 754 (Colo. 1979), *superseded by rule as stated in People v. Rath*, 44 P.3d 1033, 1039 (Colo. 2002).

¶24 Res gestae became a convenient way to bypass the more rigorous requirements of *Stull* and its common-law progeny. It became a catchall for admitting all sorts of misdeeds and character evidence — no matter how attenuated

---

[4] *Stull* required that (1) the prosecutor inform the court of the purpose for which the evidence was offered; (2) if the court admitted the evidence, "it should *then and there* instruct the jury as to the limited purpose for which the evidence is being received and for which the jury may consider it"; (3) the written jury instructions should repeat the limited purpose for which the evidence was admitted; and (4) any reference to the evidence should be in such terms as "transactions" or "acts" or "conduct" rather than "offenses" or "crimes" or the like. 344 P.2d at 458–59.

12

in time, place, or manner—without carefully considering whether it was intrinsic or extrinsic to the charged crime. *See Lancaster v. People*, 615 P.2d 720, 723 (Colo. 1980) (applying pre-Rules common law and noting that although "we have alluded to the importance of the temporal proximity of the statement to the event in a number of cases, we also have noted that contemporaneity of the act and the assertion is not required" (citations omitted)).

## C. The Modern Rules of Evidence

¶25 Although the modern Rules we adopted in 1980 said nothing about res gestae, they broadly favored the admission of relevant evidence. Under Rules 401 and 402, unless otherwise prohibited by constitution, rule, or statute, all evidence is admissible if it tends to make the existence of any consequential fact more or less probable. And Rule 403 provides that otherwise relevant evidence may be excluded "if its probative value is *substantially* outweighed by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (Emphases added.)

¶26 Furthermore, the Rules of Evidence included Rule 404, which now governs the admissibility of character evidence. Under 404(a), with certain limited exceptions, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a

13

particular occasion." And 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character" but may be admissible for purposes such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b)(3) requires that, in criminal cases, the prosecution provide the court and the defendant with reasonable notice of its intent to introduce other-acts evidence in writing before the trial. The notice must include the permitted purpose for which admission of the evidence is sought and the reasoning supporting that purpose. CRE 404(b)(3)(B).[5]

¶27     In *People v. Spoto*, 795 P.2d 1314, 1318–19 (Colo. 1990), this court "articulated a framework for determining the relevancy of this kind of [character] evidence within the scheme of the Rules, analyzing the requirements of CRE 401–404 in terms of four specific components, or evidentiary considerations." *Williams*, ¶ 8, 475 P.3d at 596. Such evidence must be (1) logically relevant (2) to a material fact (3) independent of the prohibited inference of the defendant's bad character, and

---

[5] This court amended CRE 404(b) on March 29, 2021, effective July 1, 2021, to, among other things, create subsection (3). The substance of the Rule remains largely unchanged.

14

(4) the probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice. *Id.* at ¶ 9, 475 P.3d at 596. If a court determines the evidence is admissible, the court must also, upon request, contemporaneously instruct the jurors of the limited purpose for which the evidence may be considered. CRE 105; *see People v. Bondsteel*, 2015 COA 165, ¶ 85, 442 P.3d 880, 897, *aff'd*, 2019 CO 26, 439 P.3d 847.

¶28   And so, under the framework of the Rules, courts can admit uncharged misconduct evidence for almost any non-propensity purpose:

> In contrast to the former narrowly defined exceptions to a general rule of exclusion, we have therefore made clear that Rule 404(b) identifies a single purpose for which other-crime evidence must always be excluded and delineates a non-exclusive list of examples of other reasons for which other-crime evidence is not to be excluded if it is otherwise admissible according to the rules of relevance. . . . The traditional litany of narrowly circumscribed exceptions of pre-Rules decisional law . . . no longer limits the admissibility of other-crime evidence.

*Williams*, ¶¶ 11–12, 475 P.3d at 596–97; *see also Rath*, 44 P.3d at 1038–39.

### D.  Examples of Inconsistency

¶29   Despite these developments, the res gestae doctrine remained. Unsurprisingly, courts wrestling with whether an act is res gestae evidence or 404(b) evidence have reached inconsistent and often unpredictable results.

¶30   Consider, for example, *People v. Hickam*, 684 P.2d 228, 230–31 (Colo. 1984), in which the prosecution charged the defendant with felony murder for a death

that occurred during the defendant's flight from an attempted robbery. This court concluded evidence of the contemporaneous underlying robbery was admissible res gestae evidence of felony murder. *Id.* at 231–32. However, because one element of felony murder is proof that the defendant committed (or attempted to commit) one of the statutorily enumerated predicate crimes, evidence of the predicate was plainly relevant to proving felony murder and not unfairly prejudicial. Thus, we need not have relied on res gestae because evidence of the robbery was admissible under Rules 401–403.

¶31 Now compare *Hickam*—where the proposed res gestae evidence and the charged offense occurred contemporaneously—to the following two examples involving more attenuated temporal connections between such evidence and the charged offenses.

¶32 In *People v. Czemerynski*, 786 P.2d 1100, 1103 (Colo. 1990), the prosecution charged the defendant with harassment and criminal extortion based on threatening phone calls he allegedly made to the victim during a four-month period. The trial court, "[r]elying on CRE 404(b)," admitted hundreds of calls the defendant had allegedly made before and after the charged period "because [the evidence] proved identity and *was part of the res gestae* of the criminal episode." *Id.* at 1109 (emphasis added). This court concluded that the trial court had not abused its discretion by invoking both res gestae and Rule 404(b) to admit the evidence.

16

*Id.* But by definition, 404(b) evidence is extrinsic to the charged crime while, traditionally, res gestae evidence is intrinsic to it. *See Quintana*, 882 P.2d at 1372. So our decision unnecessarily blurred the analytical lines by approving of the trial court's reliance on mutually exclusive theories for admitting the evidence.

¶33 In *Skufca*, police officers arrested the defendant on a warrant for traffic offenses and, during a search incident to arrest, found drugs and drug paraphernalia in his car. 176 P.3d at 84. Earlier in the day, the defendant had sold drugs to an undercover DEA agent. *Id.* The prosecution sought to introduce testimony about the drug transaction as res gestae evidence to help prove that the defendant knowingly possessed the drugs that were later found in his car. *Id.* at 85. The trial court found the testimony critical to the jury's understanding of the events surrounding the arrest and therefore admissible to explain the circumstances. *Id.* This court agreed with the trial court that the earlier drug transaction was admissible res gestae evidence because it was "relevant and it helped establish for the jury the context and circumstances surrounding the crime with which [the defendant] was charged." *Id.* at 86. However, it was an act separate from the charged offense, and its admissibility should have been considered under 404(b) and *Spoto*. Moreover, under 404(b), the defendant would have been entitled to an instruction limiting the jury's use of the evidence to the prosecution's stated purpose.

17

¶34 The preceding examples demonstrate how we have muddied the law by analyzing admissibility under res gestae instead of the Rules of Evidence. A more recent decision from this court seems to have at least partially presaged the move we make today.

¶35 In *People v. Greenlee*, 200 P.3d 363, 365–69 (Colo. 2009), we concluded that the defendant's statement that he wanted to kill a woman and hide her body in a remote area, made two months before the murder at issue, was admissible under general relevancy rules (CRE 401–403) and not excludable under 404(b). Therefore, "there [was] no need to consider an alternative theory of relevance, such as *res gestae*, where the evidence [was] admissible under general rules of relevancy." *Greenlee*, 200 P.3d at 368. Although we grounded the decision in the Rules of Evidence rather than pre-Rules common law, we nonetheless added to the confusion by concluding that, because the statements were relevant independent of the impermissible inference about the defendant's character, 404(b) did not apply.[6] *Id.* But this criterion is simply part of the 404(b) analysis

---

[6] To the extent that we suggested in *Greenlee* that Rule 404(b) is implicated only by other *criminal* acts, we disavow that suggestion. *See Kaufman v. People*, 202 P.3d 542, 552–60 (Colo. 2009) (analyzing the admissibility of the defendant's non-criminal conduct, which included martials arts and weapon training, drawings, and weapons collection, under 404(b) and *Spoto*); *Masters v. People*,

18

under *Spoto*, not a basis for avoiding Rule 404(b). If the proffered evidence is extrinsic to the charged crime, which the *Greenlee* court impliedly concluded these statements were, 200 P.3d at 366–67, and if it implicates the defendant's character, its admissibility is governed by Rule 404(b). We discuss this at greater length below.

### E. Farewell Res Gestae

¶36 In his dissent to the division's opinion here, Judge Furman rightly observed that res gestae often "obscure[s] what [it] purport[s] to describe." *Rojas II*, ¶ 59, 490 P.3d at 752 (Furman, J., dissenting) (alteration in original) (quoting 1 Kenneth S. Broun et al., *McCormick on Evidence* § 190.9 (Robert P. Mosteller ed., 8th ed. 2020)). And he has not been alone in his criticism. *See, e.g.*, *Zapata*, ¶ 76, 428 P.3d at 533 (Hart, J., specially concurring) (noting that res gestae "is a vague and nearly standardless concept that is applied too expansively"); *People v. Agado*, 964 P.2d 565, 569 (Colo. App. 1998) (Briggs, J., specially concurring) ("[T]he doctrine has confounded counsel and courts, often tending to create as much confusion as clarification.").

---

58 P.3d 979, 996–1004 (Colo. 2002) (analyzing the admissibility of the defendant's drawings and writings under 404(b) and *Spoto*).

¶37 Not only is the doctrine vague, it's harmful. Because of its ambiguity, res gestae—which was never more than a theory of relevance, *Greenlee*, 200 P.3d at 368—is more often treated as a theory for near-universal admissibility. The doctrine invites truncated analysis. As noted by Justice Hart in her special concurrence in *Zapata*, res gestae all too often "short-circuit[s] the evaluation called for in Rule 404(b)" analysis. ¶ 75, 428 P.3d at 532–33. The result has been that courts often skip the first step in deciding whether a defendant's acts are admissible: determining if the evidence is intrinsic or extrinsic to the charged offense. And by skipping this step, courts often admit what should be extrinsic, 404(b) evidence without conducting a *Spoto* analysis or adhering to procedural safeguards, or they consider the admissibility of intrinsic evidence under 404(b) and *Spoto*, effectively diluting the general relevancy rules.

¶38 The "completing the story" rationale to admit other-acts evidence "create[s] the greatest risk of subverting the limitations that ought to apply whenever the jury is informed of a person's uncharged wrongdoing." David P. Leonard, *New Wigmore on Evidence: Evidence of Other Misconduct* § 5.3.2 (2d ed. Supp. 2020). This application of res gestae risks being the exception that swallows Rule 404(b). For example, in *Lucas v. People*, 992 P.2d 619, 624 (Colo. App. 1999), a case involving a murder allegation, a division of the court of appeals approved of the trial court's admission of evidence of a burglary the defendant committed three days before

the charged crime under the doctrine of res gestae to demonstrate that he and his friends left Colorado Springs with no means of supporting themselves. The prosecution asserted that they "began to commit crimes in order to provide for themselves" and, operating under such conditions, "encountered, robbed, and killed the victim." *Id.* This language is "perilously close to simply admitting evidence of bad character." Furman & England, *supra*, 38 Colo. Law. at 38.

¶39 Moreover, the continued use of res gestae is unnecessary. "[E]very rule of evidence to which it has ever been applied exists as a part of some other well-established principle and can be explained in the terms of that principle." 6 John Henry Wigmore, *Evidence in Trials at Common Law* § 1767 (James H. Chadbourne rev., 1976).

¶40 Colorado's experience is not unique. Many jurisdictions have determined that res gestae is incompatible with the modern Rules. *See, e.g.*, *People v. Jackson*, 869 N.W.2d 253, 264 (Mich. 2015) ("[T]he plain language of MRE 404(b) . . . sets forth no such 'res gestae exception' from its coverage. Nor do we see any basis for reading one into the rule."); *State v. Fetelee*, 175 P.3d 709, 735 (Haw. 2008) (concluding that the Hawaiian Rules of Evidence supersede res gestae); *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) ("[W]e are confident that there is no general 'complete the story' or 'explain the circumstances' exception to Rule 404(b) . . . ."). And several of the federal courts have stopped relying on res

gestae, or "inextricable intertwinement," as a theory of admission. *E.g., United*

*States v. Gorman*, 613 F.3d 711, 719 (7th Cir. 2010) ("[R]esort to inextricable

intertwinement is unavailable when determining a theory of admissibility."); *see*

*also* Daniel J. Capra & Liesa L. Richter, *Character Assassination: Amending Federal*

*Rule of Evidence 404(b) to Protect Criminal Defendants*, 118 Colum. L. Rev. 769,

798–800 (2018).[7]

---

[7] The federal analogue to res gestae, the "inextricably intertwined" doctrine, has come under fire for many of the same reasons motivating our decision today. *See, e.g.*, Edward Imwinkelried, *The Second Coming of Res Gestae: A Procedural Approach to Untangling the 'Inextricably Intertwined' Theory for Admitting Evidence of an Accused's Uncharged Misconduct*, 59 Cath. U. L. Rev. 719, 729–30 (2010) ("'Inextricably intertwined' is the 'modern de-Latinized' equivalent of *res gestae*, and it has been savaged by a similar critique. . . . The vacuous nature of the test's wording gives courts license to employ sloppy analysis and allows them quickly to slip from a conclusory analysis to a desired conclusion." (citations omitted)); Milton Hirsch, *"This New-Born Babe an Infant Hercules": The Doctrine of "Inextricably Intertwined" Evidence in Florida's Drug Wars*, 25 Nova L. Rev. 279, 280–81, 294–95, (2000) (noting that res gestae often operates as a "shibboleth" or "talisman," which seemingly, upon incantation, allows courts to engage in results-oriented decision-making); Jason Brauser, *Intrinsic or Extrinsic?: The Confusing Distinction Between Inextricably Intertwined Evidence and Other Crimes Evidence Under Rule 404(b)*, 88 Nw. U. L. Rev. 1582, 1618 (1994) ("By abolishing the inextricably intertwined exception, the courts will be forced to analyze whether uncharged misconduct evidence is offered for a legitimate purpose or whether it is offered only to show a defendant's character."). Some courts have been similarly unsparing. *See, e.g.*, *United States v. Cureton*, 739 F.3d 1032, 1037 (7th Cir. 2014) (noting that res gestae "is usually propensity evidence simply disguised as inextricable intertwinement evidence, and is therefore improper" (quoting *Gorman*, 613 F.3d at 718)).

¶41 We now join those jurisdictions and abolish the res gestae doctrine in Colorado. For all of the reasons provided above, we are clearly convinced that more good than harm will come from departing from our precedent regarding res gestae evidence. In doing so, we seek to do more than simply de-Latinize the analysis. We strive to move beyond the use of catchphrases and metaphors for deciding when Rule 404(b) is at issue.

## F. How to Decide When Rule 404(b) Applies

¶42 We recognize that abolishing the res gestae doctrine offers no magic wand. It won't eliminate the line-drawing problems inherent in deciding what evidence warrants 404(b) review. After all, Rule 404(b) requires trial courts to evaluate, in the first instance, when "other" crimes, wrongs, or acts are at issue. Therefore, some ambiguity remains regarding when the charged crime ends and "other" acts begin.

¶43 Furthermore, Rule 404(b) applies only when the trial court determines that uncharged misconduct evidence supports an improper inference of the defendant's character. *See Old Chief v. United States*, 519 U.S. 172, 184 (1997) (describing Rule 404(b) as "dealing with admissibility when a given evidentiary item has the dual nature of legitimate evidence of an element *and* illegitimate evidence of character" (emphasis added)); *see also United States v. Kupfer*, 797 F.3d 1233, 1242–43 (10th Cir. 2015) (explaining that evidence of a defendant's other acts

23

is only subject to Rule 404(b) if it concerns the defendant's character). If evidence doesn't implicate the defendant's character, Rule 404(b) doesn't govern its admissibility.

¶44 We join those courts that generally recognize an intrinsic-extrinsic distinction, with extrinsic acts falling under Rule 404(b) and intrinsic acts falling outside the Rule's scope. *See, e.g., United States v. Green*, 617 F.3d 233, 248–49 (3d Cir. 2010); *Bowie*, 232 F.3d at 928–29. These courts have narrowed the definition of intrinsic evidence to two acts: (1) those that directly prove the charged offense and (2) those that occur contemporaneously with the charged offense and facilitate the commission of it. *Green*, 617 F.3d at 248–49; *Bowie*, 232 F.3d at 929; *see also State v. Rose*, 19 A.3d 985, 1009–10 (N.J. 2011) (abolishing the res gestae doctrine and applying *Green*).

¶45 Examples from jurisdictions already operating in the post-res gestae world are instructive. In *United States v. Roberson*, No. 21-102 (JDB), 2022 WL 35643, at *2 (D.D.C. Jan. 4, 2022), the defendant was charged with one count of distribution of child pornography for sending a video by email to "Email Address 2." In a motion in limine, the prosecution sought to introduce all the defendant's email communications (over seventy emails spanning a fourteen-month period) with Email Address 2. *Id.* at *2, 4. The court observed that "[b]ecause Rule 404(b) applies exclusively to evidence of other acts . . . only '[a]cts "extrinsic" to the crime

24

charged are subject to Rule 404(b)'s limitations; acts "intrinsic" to the crime are not.'" *Id.* at *3 (quoting *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (per curiam)). "[A]n act is 'intrinsic' to the charged conduct for purposes of Rule 404(b) only if it (a) is part of the charged offense; (b) is offered as direct evidence of the charged crime; or (c) was performed contemporaneously with the charged crime and facilitated the commission of the charged crime." *Id.* at *4.

¶46 Using this framework, the court first summarized the communications sent before the video. Relying on the prosecution's summary, the court described that the first email was the defendant initiating contact with Email Address 2, the second was Email Address 2 responding and directly soliciting the criminal act, and the third email was the defendant sending the video that formed the basis of the charged offense to Email Address 2. *Id.* This thread of communication all occurred within minutes. *Id.* The court concluded that these emails "leading up to and immediately surrounding" transmission of the video were intrinsic evidence because they occurred contemporaneously with the charged offense and facilitated its commission and were not, therefore, constrained by Rule 404(b). *Id.*

¶47 The court then analyzed the emails sent after the video, some sent more than a year later, concluding that "[i]t stretches credulity to call . . . two messages sent fourteen months apart contemporaneous with one another." *Id.* Further, because the court couldn't "see how an act occurring well after the charged crime could

25

'assist in bringing [the crime] about,'" it concluded the post-video emails were not intrinsic to the charged crime. *Id.* at *5 (quoting *United States v. Cox*, No. CR-16-08202-001-PCT-ROS, 2018 WL 9785498, at *1 (D. Ariz. May 1, 2018)).

¶48 Finally, the court rejected the government's argument that all the emails between the defendant and Email Address 2 "provide[d] necessary and indispensable context for [the defendant's] conduct," concluding that "such a broad view of 'intrinsic' . . . is too 'flimsy' a basis for jettisoning Rule 404(b) entirely." *Id.* The court concluded the post-video emails were nonetheless admissible under Rule 404(b) because they were probative of non-propensity purposes, relevant to a material issue other than the defendant's character, and not unduly prejudicial. *Id.* at *5–7.

¶49 The court in *United States v. Shea*, 159 F.3d 37 (1st Cir. 1998), applied a similar test. In *Shea*, police were searching for the identity of two men who had attempted to rob a bank. *Id.* at 38–39. During the attempted robbery, one man pointed a shiny, silver revolver at one of the clerks while the other man pointed a black revolver at the other clerk; however, because neither clerk could open the vault, the robbers left empty-handed. *Id.* at 38. The men entered and exited the bank through the same broken window, with one of the men cutting himself and leaving DNA evidence at the scene that was later matched to the defendant. *Id.* One week after the attempted robbery, the defendant was arrested for another, unrelated

26

robbery. *Id.* at 38–39. During that arrest, police seized from the defendant a black revolver that matched the description of one of the guns used during the earlier, attempted robbery. *Id.*

¶50 At the defendant's trial for the earlier, attempted armed robbery, the prosecution sought to introduce the black revolver. *Id.* at 38–39. The trial court admitted the revolver under Rule 404(b). *Id.* at 39. The appellate court rejected this reasoning, concluding the revolver alone was not 404(b) evidence and its admissibility should have been evaluated under Rules 401 and 403. *Id.* The court concluded that the revolver seized from the defendant during his arrest was "intrinsic, direct evidence" that he used the same revolver during the attempted robbery for which he was on trial. *Id.* at 39–40. The court further concluded that admitting the revolver into evidence was not unfairly prejudicial (as opposed to evidence of the second robbery, which would have been an extrinsic act subject to 404(b) analysis). *Id.* at 40.

¶51 To further elucidate the relevant concepts, consider a purely hypothetical addition to *Shea*. Imagine the defendant had gone to the bank the day before the alleged robbery to cash a check, and the prosecution sought to introduce evidence of that visit at trial to suggest that the defendant could have been casing the bank. Because evidence of that visit neither directly proves the charged offenses nor occurred contemporaneously with them and facilitated their commission, that

27

evidence is not intrinsic. Further, cashing a check at a bank does not implicate character, so admission of that evidence is not governed by 404(b). The court is left to consider the admissibility of that evidence pursuant to Rules 401–403.

¶52 With these examples in mind, we hold that, in evaluating whether uncharged misconduct evidence triggers Rule 404(b), a trial court must first determine if the evidence is intrinsic or extrinsic to the charged offense. Intrinsic acts are those (1) that directly prove the charged offense or (2) that occurred contemporaneously with the charged offense and facilitated the commission of it. Evidence of acts that are intrinsic to the charged offense are exempt from Rule 404(b) because they are not "other" crimes, wrongs, or acts. Accordingly, courts should evaluate the admissibility of intrinsic evidence under Rules 401–403. If extrinsic evidence suggests bad character (and thus a propensity to commit the charged offense), it is admissible only as provided by Rule 404(b) and after a *Spoto* analysis. Conversely, if extrinsic evidence does not suggest bad character, Rule 404(b) does not apply and admissibility is governed by Rules 401–403.[8]

---

[8] Of course, like all evidentiary decisions, a trial court's ruling regarding whether evidence triggers Rule 404(b) is subject to review under the deferential abuse of discretion standard. *See People v. Jones*, 2013 CO 59, ¶ 11, 311 P.3d 274, 276.

## G. Application to Rojas's Alleged Theft

¶53 Because Rojas preserved her objection to the court's allegedly non-constitutional error, we review any error for ordinary harmlessness. *Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116, 119; Crim. P. 52(a). Under this standard, we must reverse if the error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Hagos*, ¶ 12, 288 P.3d at 119 (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)); *see* Crim. P. 52(a). To determine if that occurred, we look to whether the prosecution has shown that "there is no reasonable possibility that [the error] contributed to the defendant's conviction." *Pernell v. People*, 2018 CO 13, ¶ 22, 411 P.3d 669, 673.

¶54 The prosecution charged Rojas with two counts of theft for her conduct between February 1, 2013, and July 31, 2013. Thus, Rojas's August application, filed after the relevant time period, neither directly proved the prior thefts nor occurred contemporaneously with them and facilitated their commission. Rojas's filing of the August application does not satisfy our definitions for intrinsic evidence and is, therefore, an extrinsic, "other act." Moreover, evidence that Rojas knowingly submitted a later application containing false information about her income invites the inference that she is a "bad" person who lies on applications and so she must have knowingly lied on the applications at issue in her trial. Therefore, because the August application is extrinsic to the charged crimes and

29

invites a propensity inference, its admissibility is governed by Rule 404(b). The trial court abused its discretion by admitting the evidence without the required *Spoto* analysis and accompanying procedural safeguards. *See People v. Chavez*, 2020 COA 80M, ¶ 8, 486 P.3d 377, 378 ("A court abuses its discretion if it misinterprets or misapplies the law.").

¶55 The error was not harmless. The only issue at trial was whether Rojas obtained the food stamp benefits by deception. "To prove the element of deception, the prosecution must prove that the defendant made a misrepresentation, which is 'a false representation of a past or present fact,' and that 'the victim parted with something of value in reliance upon [the defendant's] misrepresentation[].'" *People v. Vidauri*, 2021 CO 25, ¶ 13, 486 P.3d 289, 242 (quoting *People v. Prendergast*, 87 P.3d 175, 185 (Colo. App. 2003)) (alterations in original). Rojas's defense at trial was that her misrepresentations on the January application resulted from a misunderstanding of the forms; the prosecution contended that she made a knowing misrepresentation.

¶56 The prosecution relied on the August application during closing arguments. And, even if this evidence might have been admissible under Rule 404(b) for some non-propensity purpose, the absence of a limiting instruction permitted the jury to misuse the evidence. We believe there is a reasonable probability that admitting the August application, without any 404(b) safeguards, affected the fairness of the

30

trial by allowing the jury to convict Rojas based on implied propensity—she misrepresented her income in August; therefore, she likely did it on the earlier applications too.

## III. Conclusion

¶57 The judgment of the court of appeals is reversed, and the case is remanded to the trial court for a new trial.

CHIEF JUSTICE BOATRIGHT, joined by JUSTICE BERKENKOTTER, concurred in the judgment only.

CHIEF JUSTICE BOATRIGHT, joined by JUSTICE BERKENKOTTER, concurring in the judgment only.

¶58 I agree with the majority that the trial court improperly admitted Rojas's August application as res gestae evidence. And I further acknowledge that the doctrine of res gestae has, at times, been misconstrued in Colorado's courts. But I disagree with the majority's conclusion that jettisoning the doctrine will solve any problems—it won't. Regardless of whether we call evidence res gestae, intrinsic evidence, or other-acts evidence under CRE 404(b), courts will always be confronted with the difficult question of when the crime starts and stops. In other words, no matter what the doctrine is called, courts still must parse out when an act begins to constitute an "other act." Because that question will always exist, I fear that the majority's decision is only going to cause a needless explosion of CRE 404(b) hearings, furthering the burden on Colorado's overworked trial courts. And equally importantly, such broad action violates stare decisis. As the majority acknowledges, res gestae has been a part of Colorado law for well over a century. *See* Maj. op. ¶ 18. Yet, today, it boldly proclaims that res gestae must be discarded. I strongly, but respectfully, disagree. Therefore, I concur in the judgment only.

1

## I. Res Gestae Evidence Is Just Relevant Evidence

¶59 Simply put, res gestae is a label used to describe a subset of relevant evidence. As such, we have said that res gestae is a theory of relevance, not an alternative theory of admissibility that escapes the scrutiny of CRE 401, 402, and 403. *People v. Quintana*, 882 P.2d 1366, 1374 (Colo. 1994) ("*Res [g]estae* evidence is admissible only if it is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice.").

¶60 Res gestae evidence is "linked in time and circumstances with the charged crime, . . . forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *Id.* at 1373 (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)). Moreover, the doctrine includes "acts and words which are so closely connected" to the charged offense "as to constitute a part of the transaction, and without knowledge of which the main fact might not be properly understood." *People v. Rollins*, 892 P.2d 866, 872–73 (Colo. 1995) (quoting *Woertman v. People*, 804 P.2d 188, 190 n.3 (Colo. 1991)).

¶61 The majority and I seem to agree that in order to elucidate the definition of res gestae, it is essential to distinguish CRE 404(b) and the specific types of evidence that the Rule endeavors to protect against. Under CRE 404(b)(1), parties are prohibited from introducing evidence of "any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person

acted in conformity" therewith. This Rule aims to protect defendants against unfairly prejudicial "propensity" arguments—arguments that use evidence of a defendant's "bad" character to show that she acted in line with her character and therefore committed the charged offense. *See Masters v. People*, 58 P.3d 979, 995 (Colo. 2002); *Stull v. People*, 344 P.2d 455, 458 (Colo. 1959), *superseded by rule as stated in People v. Williams*, 2020 CO 78, ¶¶ 7–15, 475 P.3d 593, 595–98.

¶62    By its plain language, CRE 404(b)(2) makes clear that such evidence is admissible for purposes besides propensity, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." However, because the Rules of Evidence aim to avoid unfairly prejudicing defendants, a proponent of other-acts evidence faces additional procedural hurdles. The proponent must provide opposing counsel with pretrial notice of intent to introduce other-acts evidence. CRE 404(b)(3). The trial court must make multi-part evidentiary findings to determine whether the evidence is or is not admissible under CRE 404(b). *See Kaufman v. People*, 202 P.3d 542, 552–53 (Colo. 2009). And if the court does find the evidence admissible, it must then "instruct the jury, pursuant to CRE 105, on the limited purpose for which such evidence is admitted," both at the time of admission and at the close of evidence. *People v. Garner*, 806 P.2d 366, 374 (Colo. 1991).

3

¶63 The distinction between res gestae and CRE 404(b) is visible in the plain language of the Rule itself. While res gestae evidence is integral to the charged crime, CRE 404(b) proscribes introducing evidence of "other" acts, crimes, or wrongdoings. And so, under a plain reading of CRE 404(b), only evidence of acts, crimes, or wrongdoings that are *independent from* the charged offense must be presented with special caution for fear of unfair prejudice to the defendant. *Quintana*, 882 P.2d at 1373 n.12. CRE 404(b) was "never intended to apply to evidence that is admissible due to its inherent connection to the crime charged." *State v. Gunby*, 144 P.3d 647, 668 (Kan. 2006) (McFarland, C.J., dissenting) (referring to Kan. Stat. Ann. § 60-455 (2021), Kansas's version of CRE 404).

¶64 Therefore, res gestae evidence and CRE 404(b) evidence are different types of evidence. On the one hand, CRE 404(b) protects defendants from the introduction of evidence that is extrinsic, albeit relevant, to the charged offense. On the other hand, the doctrine of res gestae recognizes that the prosecution may introduce relevant evidence of acts intrinsic to the charged offense. This separation makes sense because the purpose underlying CRE 404(b) is not served by excluding res gestae evidence. While a jury may misuse extrinsic evidence for propensity purposes, evidence of acts admitted under res gestae *are themselves part of the charged offense*; thus, their introduction does not offend the propensity rule. *See Quintana*, 882 P.2d at 1372.

4

## II. Res Gestae Has Been Subject to Misuse

¶65    The majority criticizes res gestae as being too confusing and too malleable. *See* Maj. op. ¶¶ 36–38.  It worries that res gestae is used to sneak in the type of propensity evidence that CRE 404(b) is meant to exclude.  *See id.* at ¶¶ 2, 24, 38. Despite the doctrinal distinction between CRE 404(b) and the res gestae doctrine, I take the majority's point that Colorado's courts have, at times, admitted evidence under res gestae when it should have been protected by the safeguards of CRE 404(b).  In fact, I agree.

¶66    To be frank, this case presents a clear example of other-acts evidence that was improperly admitted as res gestae evidence.  The People charged Rojas for unlawfully receiving food stamps from February 1, 2013, to July 31, 2013.  The separate August application was (1) removed in time and (2) inessential to complete the story of the charged offense.  *See Rollins*, 892 P.2d at 873 (finding evidence that was "neither contemporaneous with nor provided a background for the offense charged" did not constitute res gestae evidence).  Submitting the August application did not help Rojas allegedly steal food stamps from February to July of 2013.  It was not "so closely connected" with the charged crime that it "constitute[d] a part of the transaction."  *See id.* at 872 (quoting *Woertman*, 804 P.2d at 190 n.3).  In fact, the subsequent application was wholly extrinsic.

5

¶67 With that said, I agree with the majority that the proper course of action here is reversing Rojas's conviction.[1] But, in my view, it is improper to use this case to disregard a legal doctrine that has existed for over a century, and I believe such action will cause (at best) confusion and (at worst) misuse. Instead, I would strengthen the already-existing guardrails surrounding the doctrine. First, I would emphasize that res gestae evidence must be *essential* to the commission of the charged crime. Second, I would caution that, even if the proffered evidence is essential, it is not admissible if it is unfairly prejudicial under CRE 403. Third, where appropriate, I would encourage trial courts to provide CRE 105 limiting instructions alongside evidence admitted as res gestae.[2] Finally, I would stress that the doctrine of res gestae is *not* an exception to skirt the protections of

---

[1] Instead of simply remanding for a new trial, as the majority does, *see* Maj. op. ¶ 4, I would reverse and remand with specific instructions for the trial court to determine if this evidence is admissible under CRE 404(b) prior to the new trial. This way, there would be no unnecessary confusion.

[2] Courts are not required to provide limiting instructions under CRE 105 when they admit evidence as res gestae. *See Quintana*, 882 P.2d at 1375. However, when it comes to some types of res gestae evidence—such as essential, contextual evidence that could nonetheless implicate a defendant's character—nothing prohibits courts from alerting the jury to the limited, contextual purpose for which the evidence is admitted. *See People v. Gladney*, 570 P.2d 231, 233 (Colo. 1977) (noting that it is the "better practice" to provide a limiting instruction alongside res gestae evidence). Encouraging trial courts to more freely provide a limiting instruction alongside sensitive res gestae evidence would lessen the risk that the jury might misuse it.

CRE 404(b): Other-acts evidence that is truly extrinsic, such as the evidence of Rojas's subsequent application in this case, must be safeguarded by pretrial notice, a hearing, and, where appropriate, a limiting instruction.

### III. Abandoning Res Gestae Is Unwise

¶68    I believe that the majority's decision to casually say "farewell" to res gestae is ill-advised for three reasons.  First, res gestae is merely a framework that assists courts in making difficult and fact-intensive evidentiary decisions.  There will always be the question of when a crime starts and when it stops; the majority's attempt to answer that question just shifts the analysis to CRE 404(b).  Second, the majority's holding today imposes an unreasonable burden on Colorado's trial courts by needlessly pushing them to analyze vast amounts of evidence at a pretrial stage under the rubric of CRE 404(b).  Finally, to discard res gestae violates the mandate of stare decisis and disrupts the rule of law.

### A.  The Majority's Decision Does Not Solve the Underlying Dilemma

¶69    The majority concludes that the solution to res gestae's misuse is to rebrand the doctrine.[3]  *See* Maj. op. ¶¶ 44–52.  Pursuant to the majority's new rule, a

---

[3] I say that the majority's opinion "rebrands" the doctrine because, despite its broad proclamation that the mere notion of res gestae obfuscates CRE 404(b) analyses, *see* Maj. op. ¶ 36, it has chosen to retain res gestae's core concept, *see id.*

reviewing court must determine what constitutes the "charged offense." *Id.* at ¶ 44. Evidence of acts that "implicate" the defendant's character but (1) directly prove the charged offense, or (2) are performed contemporaneously with the charged offense and therefore facilitate its commission will be admissible as "intrinsic" evidence under the framework of CRE 401–403. *Id.* at ¶¶ 43–44. Evidence of acts that implicate the defendant's character but are "extrinsic"—that is, they do not directly prove nor facilitate the offense—will then become other-acts evidence under CRE 404(b). *Id.* at ¶ 52. And whether intrinsic or extrinsic, evidence will be governed by CRE 401–403 (not CRE 404(b)) as long as it does not implicate the defendant's character. *Id.* at ¶¶ 43, 52. That seems simple enough.

¶70 But, in my view, rebranding res gestae in this way solves nothing. This is because the majority's holding seemingly ignores the reality that crimes are not committed in neat packages. Every offense comes with context; therefore, practically speaking, "prosecutors cannot . . . avoid showing certain acts that are not themselves perfectly congruent with the categories defining the charged crime

---

at ¶ 44 (maintaining the "intrinsic-extrinsic distinction"). As such, it seems that the majority has "abolish[ed]" res gestae in name only. *See id.* at ¶ 41.

8

or crimes." 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:33 (4th ed. 2021).

¶71 My point is simply that by substituting "intrinsic evidence" for res gestae evidence, the majority does not vanquish the debate as to what is part of the crime—it merely tweaks the wording of the test under which that evidence is admissible. Under the majority's new regime, the fight will now be over which acts "directly prove" or "facilitate" the charged offense (and are therefore admissible under the framework of CRE 401–403) as opposed to which acts do not fit that description (and are therefore protected by CRE 404(b)).

¶72 Indeed, in jurisdictions where appellate courts have disavowed res gestae in favor of intrinsic evidence, the struggle to define what does and does not constitute Rule 404(b) evidence is still being battled out in the trial courts. Consider, for example, one of the cases that the majority apparently models its new rule upon, *United States v. Green*, 617 F.3d 233 (3d Cir. 2010). *See* Maj. op. ¶ 44. In *Green*, the Third Circuit Court of Appeals denounced the federal equivalent of res gestae in favor of roughly the same rule that the majority announces today. 617 F.3d at 246–49. With this proclamation, the court intended to nullify the "elusive and unhelpful" doctrine in favor of cleaner rules. *Id.* at 246.

¶73 Yet, foreseeably, the *Green* court merely shifted the conversation. After the decision was handed down, trial courts in the Third Circuit were left to consider

9

what, exactly, is admissible under the new, "narrow[er]" intrinsic evidence standard. *Id.* at 248. And roughly twelve years later, it seems as if the new label gives rise to the same varied results as the old one. *See United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020) ("[T]he nature and scope of the evidence able to be deemed intrinsic will vary with the charged offense. In particular, where a criminal conspiracy is charged, courts have afforded the prosecution considerable leeway to present evidence, even of unalleged acts within the indictment period . . . .") (collecting cases); *see also United States v. Schneider*, 801 F.3d 186, 200–01 (3d Cir. 2015) (ruling that evidence that the defendant showed the victim a sexually charged film was admissible as intrinsic evidence in a prosecution for traveling in foreign commerce with the intent to engage in sex with a minor); *United States v. Gassew*, 42 F. Supp. 3d 686, 694 (E.D. Pa. 2014) (concluding it was proper to admit evidence that the defendant robbed patrons and employees of a bar at the same time he robbed the bar itself because it "directly prov[ed]" that he robbed the bar—the charged offense in that case). It seems that rebranding res gestae has failed to eliminate the fight over Rule 404(b) classifications in the Third Circuit, and I predict Colorado will be no different.

¶74 Moreover, I believe the majority's ruling today will have unintended consequences. At oral argument, defense counsel raised an interesting argument. She posited that the doctrine of res gestae prompts hurried, whispered

conversations at the bench, where trial court judges must make split-second decisions about what is and is not res gestae evidence. From my experience, I know that her assertion is accurate. But the problem that defense counsel diagnoses is not due to res gestae's imperfection. Rather, it is a direct result of how inherently difficult it is to determine when the charged offense ends and "other" offenses, acts, or misdeeds begin. That grey area will not suddenly become black and white after res gestae is replaced. For this reason, I am certain that, despite the majority's holding today, those whispered conversations and split-second evidentiary rulings at the bench will continue. The only difference is that, going forward, these conversations will be about why there was not adequate pretrial notice under CRE 404(b) for a vast array of evidence. In short, the majority's solution just shifts the type of debate that will necessarily occur. The fact is that these difficult decisions will always exist, regardless of what they are called.

### B. The Majority's Decision Places an Unreasonable Burden on Trial Courts

¶75 Undoubtedly, it is Colorado's already overworked trial courts that will bear the brunt of the majority's holding. Because of the dangers of the propensity inference, CRE 404(b) requires the proponent of other-acts evidence to give opposing counsel advance notice of intent to introduce the evidence at trial and the trial court to both (1) rule on the evidence's admissibility prior to trial and

11

(2) provide an accompanying limiting instruction if it rules the evidence admissible.

¶76 The majority's decision to discard res gestae facilitates a shift. Now, I envision that, mid-trial, attorneys will argue that evidence of every granular detail (even if relevant and integral to the case—such as the example of the alleged robber who uses check-cashing as a ruse to scout out a bank in advance of the actual robbery, *see* Maj. op. ¶ 51) depicts an "other act" and therefore should have been safeguarded under CRE 404(b). I fear that the question of what is or isn't part of a charged offense under CRE 404(b) will be excessively litigated, clogging the courts with a glut of unnecessary pretrial hearings. In my view, it is not only unnecessary but also unreasonable to increase the workload of the trial courts in the name of a solution that, in reality, does not resolve the question of what is part of a crime and what is not. Again, that question will remain, regardless of what we call it.

### C. The Majority's Decision Violates the Mandate of Stare Decisis

¶77 Finally, under the principle of stare decisis, I believe the doctrine of res gestae should be kept intact. Stare decisis is a fundamental principle of the rule of law; it is the "preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial

12

process." *Love v. Klosky*, 2018 CO 20, ¶ 14, 413 P.3d 1267, 1270 (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)).

¶78 Throughout this court's history, "we have explained that stare decisis 'should be adhered to in the absence of sound reason for rejecting it.'" *People v. Blehm*, 983 P.2d 779, 788 (Colo. 1999) (quoting *Smith v. Dist. Ct.*, 907 P.2d 611, 612 (Colo. 1995)). In other words, we have a duty to exercise "extreme reluctance in overruling settled law." *In re Marriage of Grubb*, 745 P.2d 661, 667 (Colo. 1987) (Erickson, J., dissenting). Departure from precedent should only occur when "we are clearly convinced that (1) the rule was originally erroneous or is no longer sound because of changing conditions and (2) more good than harm will come from departing from precedent." *Love*, ¶ 15, 413 P.3d at 1270.

¶79 Here, in my view, "no reason is advanced which calls for deviating from stare decisis," *see Creacy v. Indus. Comm'n*, 366 P.2d 384, 386 (Colo. 1961); thus, we should decline to do so. As the majority acknowledges, the doctrine of res gestae is well-settled. *See* Maj. op. ¶ 18. Colorado courts have recognized the early forms of res gestae since at least the 1870s. *See Doane v. Glenn*, 1 Colo. 495, 499–501 (1872), *rev'd on other grounds by Doane v. Glenn*, 88 U.S. 33 (1874). Even in its more modern form, res gestae has been a part of our jurisprudence for over ninety years. *See Abshier v. People*, 289 P. 1081, 1088 (Colo. 1930) (holding that evidence of the defendant's other crimes was admissible because the offenses were "indivisibly

13

connected with, incidental to, and in furtherance of" the charged crime). And a quick survey of Colorado case law reveals that courts have consistently relied on the res gestae framework in tandem with the Rules of Evidence for the past forty-odd years. *See People v. Czemerynski*, 786 P.2d 1100, 1109 (Colo. 1990); *Quintana*, 882 P.2d at 1373–74; *Rollins*, 892 P.2d at 872–73; *People v. Skufca*, 176 P.3d 83, 86–87 (Colo. 2008); *People v. Merklin*, 80 P.3d 921, 924–25 (Colo. App. 2003); *People v. Thomeczek*, 284 P.3d 110, 114–15 (Colo. App. 2011); *People v. Cisneros*, 2014 COA 49, ¶¶ 105–06, 108, 356 P.3d 877, 898; *People v. Knapp*, 2020 COA 107, ¶¶ 32–34, 44, 487 P.3d 1243, 1252–53.

¶80 The majority justifies discarding this foundational doctrine by pointing to its inconsistent application and misuse in Colorado's courts, *see* Maj. op. ¶ 41, which I agree has occurred. But courts have misapplied CRE 404(b) tests as well. The truth is that these are tough calls. The endless fight over whether evidence is or is not admissible under CRE 404(b) will undoubtedly continue, no matter how the test is worded. Thus, I see no utility in the majority's ruling. Because the test for abandoning well-established precedent, as articulated in *Love*, is not satisfied, in my view, the majority violates the mandate of stare decisis with its ruling today.

## IV. Conclusion

¶81 In sum, while I agree with the majority that the misapplication of res gestae should be addressed, I believe that replacing the doctrine creates new problems

14

while failing to address existing ones. I strongly disagree with the majority's decision because it will unreasonably burden the trial courts, disturb over a century of precedent, and destabilize Colorado's evidence jurisprudence—all for the purpose of mere rebranding.

¶82 Therefore, instead of casting off the doctrine, I would simply clarify it. I would hold, as we have held for nearly a century, that evidence integral to the charged offense is relevant evidence admissible under the framework of CRE 401–403 by way of res gestae. Additionally, I would (1) caution that evidence admitted as res gestae must be *essential* to complete the story of the charged offense; (2) point out that res gestae evidence is still subject to the limitations of CRE 403; (3) encourage trial courts to provide a limiting instruction alongside res gestae evidence, where appropriate; and (4) emphasize that the doctrine cannot be used as a work-around to CRE 404(b). With this guidance, I believe we could not only preserve but also improve the framework that helps trial courts identify other-acts evidence under CRE 404(b).

¶83 Because I agree with the majority that reversal is required but believe that abandoning the doctrine of res gestae is not, I respectfully concur in the judgment only.

15